# EXHIBIT B

Case 3:26-cv-00059-SRU Document 1 Filed 01/12/26 Page 1 of 13

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JAN 12 2026 PM3:15
FILED - USDC - BPT - CT

EDWINA BROWN, *on her own behalf and as administratrix and sole beneficiary of the Estate of Edward O. Robinson,*

Plaintiff,

v.

UNITED STATES,

Defendant.

## COMPLAINT

Pro se Plaintiff[1] Edwina Brown hereby alleges for her Complaint the following:

1. This is an action to remedy practices by the U.S. Department of Veterans Affairs and its predecessor agency, the Veterans' Administration, of engaging in racial discrimination by compensating Black veterans, including Edward O. Robinson, for their service less than white veterans. Plaintiff brings this claim pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), on her own behalf and as the administratrix of Edward O. Robinson's estate and his sole heir. Plaintiff does not seek to relitigate her late father's benefits claims. Instead, she seeks to recover for the dignitary, emotional, and psychological harms suffered by her late father and herself and caused by the negligence of VA leaders in addressing the racial disparities of which they knew or should have known, and which they had a duty to remedy.

---

[1] This pleading was prepared with the help of an attorney with the Federal Pro Se Legal Assistance Program at the Quinnipiac University School of Law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1402(b) and 1391(e)(1) because Plaintiff resides in the District of Connecticut and no real property is involved.

## PARTIES

4. Plaintiff Edwina Brown is the administratrix and sole beneficiary of the estate of her late father, Edward O. Robinson. Plaintiff resides in New Haven, Connecticut, where she was born in 1946. Mr. Robinson was a life-long resident of New Haven, Connecticut and an Army veteran. As a Black servicemember, Mr. Robinson served in a racially segregated unit during World War II.

5. Defendant United States of America is sued under the Federal Tort Claims Act ("FTCA") for the tortious acts of its employees, including employees and officials of the Department of Veterans Affairs and its predecessor agency, the Veterans' Administration (collectively the "VA").

## FACTS

6. The VA has provided and administered benefits for veterans since the early 1940s. Benefits administered by the VA include benefits relating to health, housing, education, and compensation for disabilities caused by injuries suffered or exacerbated by veterans' service.

7. Veterans are generally eligible for VA benefits if they are discharged from the military "under conditions other than dishonorable." 38 U.S.C. § 101(2). Veterans who receive an "honorable discharge" from the military are generally eligible for VA benefits unless a statutory bar applies. *See* 38 U.S.C. § 5303; 38 C.F.R. § 3.12.

8. Data obtained by the National Veterans Council for Legal Redress and the Black Veterans Project pursuant to the Freedom of Information Act show that between 2001 and 2020, a Black veteran was on average 21.9% more likely to have their claim for disability compensation denied by the VA as compared to a white veteran. The data also showed, for the same time period, a white veteran was on average 22.4% more likely to have their claim for disability compensation granted by the VA as compared to a Black veteran.

9. On information and belief, the VA's racially discriminatory pattern of administering benefits, as demonstrated by data from 2001 to 2020, also occurred in prior time periods. Plaintiff is not aware of any changes in VA practices, policies, or procedures in or around 2001 that would suggest the discriminatory trend between 2001 and 2020 represented a departure from prior periods.

10. On information and belief, Plaintiff expects statistical evidence from the VA for the time period during which her late father interacted with the VA's benefits system to show the same pattern of racial discrimination.

11. VA officials, including every VA Administrator or Secretary since World War II, each Under Secretary of Veterans Affairs for Benefits, and other senior VA officials responsible for administering veterans' benefits programs knew or should have known about pervasive racial disparities in the award of veterans benefits to Black veterans.

12. VA officials violated their statutory obligation and duty of care to properly administer the law when they administered benefits in a manner that they knew or should have known

would result in racially disparate outcomes and which subjected Black veterans to dignitary, reputational, and psychological harm.

13. VA officials were deliberately indifferent to those outcomes because they knew about pervasive disparities yet failed to remedy them through improved training, supervision, monitoring, or auditing.

14. VA leaders have failed to properly train, supervise, and instruct employees on procedures and practices that would administer benefits in nondiscriminatory ways.

15. Plaintiff's late father, Edward Robinson, was inducted into the U.S. Army on or about August 19, 1943 and entered into active service on or about September 10, 1943.

16. Mr. Robinson served in combat during World War II with a primary military occupational specialty of Truck Driver Light 345 and was part of the celebrated Red Ball Express unit.

17. During his service, Mr. Robinson was awarded the European African Middle Eastern Theatre Campaign Ribbon, Good Conduct Medal, Asiatic Pacific Theater Campaign Ribbon, and Victory Medal.

18. While serving abroad, some time between 1943 and 1946, Mr. Robinson developed pilonidal disease and contracted syphilis.

19. At the time of Mr. Robinson's service, the U.S. Army treated syphilis and other venereal diseases contracted during service as "line of duty" injuries that would not be considered to have been contracted through misconduct, as long as the servicemember reported his contraction and received treatment. Servicemembers who contracted venereal disease

while serving but failed to report and receive treatment according to Army regulations were treated as having contracted the disease while in the line of duty, but were subject to penalty, such as loss of days.

20. Mr. Robinson's pilonidal disease and syphilis were injuries he incurred in the line of duty.

21. Mr. Robinson received experimental or ineffective treatment for syphilis from the U.S. Army, which he believed cured him of the disease, but did not.

22. According to historical research published by the Office of the Surgeon General of the Army, the venereal disease rate among Black servicemembers in 1943 was eight to ten times higher than among white servicemembers. *See* Leonard D. Heaton, John B. Coates, Jr., Ebbe C. Hoff, and M. Phebe, *Preventive Medicine in World War II*, vol. 5, "Communicable Diseases Transmitted through Contact or by Unknown Means" (Dec. 1, 1959).

23. Mr. Robinson separated from the U.S. Army on January 20, 1946 with an Honorable Discharge.

24. Mr. Robinson's separation record indicates that he lost 163 days, likely due to failing to report having contracted syphilis in a timely manner.

25. Mr. Robinson and his wife, the late Ernestine Robinson, had four children: three boys and one girl, Plaintiff.

26. Plaintiff was born on December 24, 1946 with congenital syphilis.

27. Plaintiff's diagnosis of congenital syphilis at birth alerted Mr. Robinson that the medical treatment he received while in service of the U.S. Army had not been effective in curing his syphilis.

28. Following Plaintiff's birth, in 1947, Mr. Robinson filed a claim with the VA for service-connected disability benefits based on syphilis. Mr. Robinson's claim was never processed or adjudicated.

29. On or about November 13, 1950, Mr. Robinson filed a second claim with the VA for service-connected disability benefits based on rectal abscesses. The claim was assigned the following C-Number: C 16 372 112. Mr. Robinson's second claim was never processed or adjudicated.

30. Mr. Robinson never received disability benefits from the VA. He struggled with the physical and psychological symptoms from his line of duty injuries, which were lifelong.

31. Mr. Robinson struggled to financially support his family while receiving no support from the VA.

32. As a child, Plaintiff resided with her late father and mother in a substandard housing development in New Haven, Connecticut referred to as "The Barracks."

33. Plaintiff, her four siblings, and parents resided in a one-bedroom unit at The Barracks.

34. The Barracks was infested with vermin and had non-working plumbing. Plaintiff recalls traveling to her grandparents' home in order to bathe.

35. As a result of dealing with Defendant's racially discriminatory benefits system, Mr. Robinson suffered dignitary, emotional, reputational, and psychological harms that reverberated through his family.

36. Plaintiff also suffered dignitary, emotional, reputational, and psychological harm caused by Defendant's administration of a racially discriminatory benefits system. The VA's de facto denial of Mr. Robinson's 1947 and 1950 benefits claims deprived Mr. Robinson of needed income to treat Plaintiff's congenital syphilis.

37. Mr. Robinson passed away on March 3, 1967.

38. Following Mr. Robinson's death, Plaintiff's late mother, Mrs. Robinson, filed a claim with the VA for service-connected death benefits in the form of a death pension. The VA denied Mrs. Robinson's claim, stating that Mr. Robinson's death was not due to any disease or injury aggravated by his service.

39. Plaintiff's diagnosis of congenital syphilis has caused her physical and emotional suffering over her lifetime, including gastic disorders, a calcified granuloma, and serious psychological illness including panic disorder, psychosis, and depression. Plaintiff has been treated with inpatient psychiatric hospitalization, including in the years 1975 and 2021.

40. Some time prior to September 2023, Plaintiff wrote to the National Personnel Records Center to request military records for Mr. Robinson, including a report of separation. By letter dated September 12, 2023, the National Personnel Records Center stated that the Center experienced a fire on July 12, 1973, which destroyed most Army servicemembers'

records who had served between 1912 and 1959, and suggested Plaintiff contact the VA Regional Office.

41. On or about October 6, 2023, Plaintiff filed a Freedom of Information Act request with the VA to obtain documents related to her late father's service, including his "C-File" (benefits claims file), pension benefit documents, service treatment records, medical records, home loan benefit records, and financial records, among other records. Plaintiff received a small number of documents from the VA in response to her request on or about October 26, 2023. With the help of Senator Chris Murphy's office, Plaintiff received a few more documents from the VA in or around 2024.

42. Plaintiff first learned of her late father's November 13, 1950 application for service-related disability benefits on or about October 26, 2023, when the VA produced a document showing Mr. Robinson's assignment of C-Number 16 372 112 for the November 13, 1950 application.

43. In or around May 2024, Plaintiff learned about the VA's history of administering a racially discriminatory benefits systems that disfavored Black veterans, including her late father.

44. On March 11, 2025, Plaintiff filed a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680 with the U.S. Department of Veterans Affairs.

45. The U.S. Department of Veterans Affairs, by letter dated April 10, 20225, acknowledged receiving Plaintiff's claim on March 31, 2025. More than six months have passed since Defendant acknowledged Plaintiff's tort claim, and Plaintiff has received no further

response from Defendant. Plaintiff has, therefore, administratively exhausted her claim under the FTCA.

46. Plaintiff, as administratrix of Mr. Robinson's estate, seeks compensation for the negligent failure of VA leaders to redress a benefits system they knew or should have known was racially discriminatory, and which caused Mr. Robinson to suffer the distinct injury of racial discrimination.

**FIRST CAUSE OF ACTION**

**FTCA: Negligence**

47. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

48. Plaintiff on her own behalf and behalf of the estate of Mr. Robinson has properly exhausted her administrative remedies.

49. Defendant owed a duty of care to Mr. Robinson because the risk Mr. Robinson would suffer emotional, psychological, and dignitary harm by interacting with a racially discriminatory benefits system was foreseeable to VA Administrators and Secretaries, and other senior officials.

50. Defendant also owed Mr. Robinson a statutory duty of care pursuant to 38 U.S.C. § 5103A to help him develop his benefits claims.

51. Defendant breached its duty of care when VA Administrators and Secretaries, and other senior officials, subjected Mr. Robinson to a racially discriminatory benefits process and a negligently trained and supervised system of benefits administration that failed to redress pervasive race discrimination of which they knew or should have known.

52. Mr. Robinson suffered injury in the form of emotional, psychological, dignitary, and reputational harm proximately caused by interacting with Defendant's racially discriminatory benefits system.

**SECOND CAUSE OF ACTION**

**FTCA: Negligent infliction of emotional distress**

53. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

54. Plaintiff on her own behalf and as administratrix of Mr. Robinson's estate has exhausted her administrative remedies.

55. Defendant's conduct of administering a racially discriminatory benefits system created an unreasonable risk of causing both Plaintiff and Mr. Robinson emotional distress. VA employees failed to adjudicate Mr. Robinson's 1947 and 1950 claims for disability benefits, resulting in those claims' de facto denial.

56. VA has an obligation under 38 U.S.C. § 303 to administer benefits in a way that is free from racial discrimination. VA leaders are also subject to an ordinary duty of reasonable care. VA breached these obligations.

57. It was foreseeable that Mr. Robinson and Plaintiff would suffer emotional distress from being forced to seek benefits from a system the VA administered in a racially discriminatory manner.

58. Mr. Robinson's and Plaintiff's emotional distress was severe enough that it might result in illness or bodily harm. Plaintiff continues to relive her traumatic childhood memories of her late father's physical and psychological suffering on a daily basis.

59. As a result of the actions of VA officials and employees, Mr. Robinson and Plaintif suffered severe emotional harm.

**THIRD CAUSE OF ACTION**

**FTCA: Negligent supervision**

60. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

61. Plaintiff on her own behalf and as administratrix of Mr. Robinson's estate has exhausted her administrative remedies.

62. Mr. Robinson suffered an injury, namely dignitary, reputational, emotional, and psychological harm, due to Defendant's failure to supervise or instruct VA staff on how to distribute benefits in a racially neutral manner.

63. VA leadership failed to create a system in which benefits administration could be tested and racial bias identified.

64. Mr. Robinson was forced to file his claims for benefits in a system that was administered in a racially discriminatory manner, exposing him to the risk of emotional and mental suffering, which he did, in fact, suffer.

65. Defendant knew or reasonably should have known of VA officials' propensity to engage in racially discriminatory administration of benefits would harm Black veterans, including Mr. Robinson, yet VA's leadership negligently failed to remedy these errors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

Edwina Brown
740 Mix Ave - Appt. 206B
Hamden, CT 06514

CERTIFIED MAIL®

9589 0710 5270 3569 8017 95

Retail

UNITED STATES POSTAL SERVICE®

U.S. POSTAGE PAID
FCM LG ENV
HAMDEN, CT 06514
JAN 07, 2026

06604

$12.70

RDC 99

S2324M501677-77

Clerk's Office
US District Court
915 LaFayette Blvd.
Bridgeport, CT 06604