**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

EDWINA BROWN,
*Plaintiff*,

v.

UNITED STATES OF AMERICA,
*Defendant*.

No. 3:26-cv-59 (VDO)

August 10, 2026

**MEMORANDUM IN**
**OPPOSITION TO MOTION TO TRANSFER**

**Table of Contents**

Table of Contents ... 1
INTRODUCTION ... 2
BACKGROUND ... 3
I. Statutory and Regulatory Background ... 3
 A. Veterans Benefits ... 3
 B. The Federal Tort Claims Act ... 4
II. Procedural and Factual Background ... 4
 A. Procedural history ... 4
 B. Robinson's military service and family background ... 6
 C. Robinson's and Plaintiff's lack of interactions with VA ... 7
 D. Administrative claim, causes of action, and alleged harms ... 8
 E. The *Monk* litigation ... 9
APPLICABLE LAW ... 10
I. Local Rule 40, Assignments ... 10
II. Relevant Precedent ... 11
ARGUMENT ... 11
I. The parties are not identical ... 12
II. There are substantial differences in the issues raised in each case ... 13
CONCLUSION ... 17

# INTRODUCTION

Plaintiff Edwina Brown seeks money damages from the United States of America under the Federal Tort Claims Act (FTCA) to compensate her for the alleged emotional trauma of interacting with a federal agency, the Department of Veterans Affairs (VA or the Agency), that she claims failed to produce equal outcomes in federal benefits according to post-hoc alleged racial metrics.

The government objects to Plaintiff's motion to transfer this matter (ECF No. 33) to United States District Court Judge Stefan R. Underhill, the judge presiding over *Monk v. United States*, No. 3:22-cv-1503 (SRU) (D. Conn.). Denying the transfer motion is appropriate and necessary because (1) the parties in *Brown* and *Monk* are not identical, and (2) the issues in the two cases are different. Therefore, the "earlier-filed," or "first-filed" rule should not even have been invoked. Moreover, the interests of justice do not favor transfer.

The government has concurrently filed a letter-brief, ECF No. 37, requesting permission to move to dismiss this case, for reasons that are—as explained in the letter brief and set forth here—independent from the facts or legal rulings in *Monk*. Specifically, there is no evidence that Plaintiff's father (a Black veteran) or she (a non-veteran) ever applied to VA for benefits.[1] Dismissal therefore is required pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h), for lack of standing. Second, Defendant proposes raising an argument under the Veterans Judicial Review Act (VJRA). Whereas Monk alleged that his benefits claims were adjudicated by the VA, Plaintiff alleges that the VA failed to adjudicate her father's or her benefits claims at all. This is akin to a challenge to the timing and processing of a benefits claim, rendering

[1] In support of its factual attack on standing, Defendant's pre-filing request proposes submitting with its motion to dismiss the declaration of a VA employee who is familiar with the available records respecting Plaintiff's father. In contrast to Plaintiff Brown, Conley Monk, Jr., is himself a Black veteran who applied for and now receives disability benefits from VA.

irrelevant the alleged grant and denial rates respecting disability benefits relied upon in *Monk* and referenced in Plaintiff's complaint. Third, Defendant proposes making a Rule 12(b)(6) challenge because, even assuming the pleaded tort exists and avoids sovereign immunity, Plaintiff is not a foreseeable victim to whom Defendant owes a duty of care under Connecticut law.

Accordingly, based on the differences of parties and issues, transfer is inappropriate.

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. Veterans Benefits

Congress enacted Title 38 of the U.S. Code to create a system for providing veterans with benefits and created the position of Secretary of Veterans Affairs (Secretary), a cabinet-level, executive official, to oversee such benefits. Congress provided veterans who receive an "honorable" discharge from the military are generally eligible for VA benefits unless a statutory bar applies. 38 U.S.C. § 5303; 38 C.F.R. § 3.12.[2] Congress also provided—through the VJRA—that the Secretary's decisions respecting benefits are final and subject to limited review:

> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans. . . . Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and *may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise*.

38 U.S.C. § 511(a) (emphasis added). That limited review begins with VA's Board of Veterans' Appeals, progresses if at all through the Court of Appeals for Veterans Claims and the Court of

[2] *See also* 38 U.S.C. § 101(2) (providing that only individuals who were discharged from service "under conditions other than dishonorable" are considered "veterans" and are eligible for VA benefits). Congress did not provide any means for VA to alter a former servicemember's discharge status. Only military branches, and their associated administrative boards, can determine and/or alter discharge status.

Appeals for the Federal Circuit, and ends with the Supreme Court, *see* 38 U.S.C. §§ 7104, 7105, 7252, 7292.

### B. The Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity by the United States for claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The FTCA contains numerous exceptions to the limited waiver of sovereign immunity and does not provide damages for any and all injuries caused by government employees. *See* 28 U.S.C. § 2680; *Feres v. United States*, 340 U.S. 135, 146 (1950) (declining to extend FTCA liability for injuries to servicemen arising out of or in the course of activity incident to military service). State law provides the "law of the place" under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA.").

## II. Procedural and Factual Background

### A. Procedural history

On January 12, 2026, Plaintiff Edwina Brown filed her complaint *pro se*, moved to proceed *in forma pauperis* (IFP), and moved for the appointment of counsel. ECF Nos. 1-3. In support of her request for appointed counsel, she disclosed that she had contacted the "Yale School of Law Veterans Clinic" on October 1, 2025, and that the Clinic declined to assist her because "the Clinic did not have resources to take on another legal matter but stated it would add me to a list to seek possible pro bono representation." *See* ECF No. 3, at 3-4. Plaintiff's case was

assigned to District Judge Vernon D. Oliver, who, after referring the IPF request to Magistrate Judge Maria E. Garcia and receiving her recommended ruling, granted Plaintiff's IPF request on March 26, 2026. ECF Nos. 10-13.

On April 15, 2026, attorneys associated with the Veterans Clinic of the Jerome N. Frank Legal Services Organization at Yale Law School, and others, none of whom have an appearance in this matter or represent a party in this matter, wrote a letter to the Court that was also docketed. ECF No. 17. The attorneys represent Conley Monk, the plaintiff in *Monk v. United States*, No. 3:22-cv-1503-SRU. In the letter, the attorneys claimed that Brown's case and *Monk* are sufficiently related[3] that Brown's matter should be *sua sponte* reassigned to Judge Stefan R. Underhill, who is overseeing the *Monk* case. *See Brown*, ECF No. 17. The following day, the same attorneys docketed a letter to Judge Underhill in the *Monk* matter, which stated: "Regardless of which judge adjudicates the *Brown* case, under the first-filed rule, it is likely that a stay of the *Brown* litigation pending disposition of the motion for class certification in *Monk* would be appropriate." *Monk*, ECF No. 176. The proposed class definition in *Monk* is "All Black applicants for veterans' benefits administered by the Department of Veterans Affairs or its predecessor at any time since January 1, 1945 and who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675." *Monk*, Am. Compl., ECF No. 36 ¶ 195. Plaintiff Monk's motion for class certification is due by November 14, 2027, approximately fifteen months from now, and briefing on class certification is not set to be completed until January 14, 2028. *Monk*, ECF Nos. 192 & 197.

[3] This representation appears to be in tension with the Veterans Clinic's earlier, off-record statement to Plaintiff that her claims were "another legal matter" for which they could not provide assistance.

On April 21, 2026, the Court in this matter granted Plaintiff's motion to appoint *pro bono* counsel to represent her. *Brown*, ECF No. 18. The Court appointed initial *pro bono* counsel on April 30, 2026, but he did not appear. ECF Nos. 20, 27. On May 21, 2026, Plaintiff, still acting *pro se*, served Defendant at the United States Attorney's Office for the District of Connecticut. ECF No. 26. The Court appointed new *pro bono* counsel on June 2, 2026; they appeared on June 17, 2026. ECF Nos. 28, 31-32.

On June 29, 2026, through counsel, Plaintiff filed her own notice of related case and motion to transfer, in which she requested that her case be reassigned to Judge Underhill. ECF No. 33. Plaintiff stated that she is a member of the proposed class in *Monk*, *id.* at 3, notwithstanding that: she is not a veteran; she appears to bring allegations that are not or are no longer at issue in the *Monk* matter; and, despite her awareness of the *Monk* matter and the fact that VA had not yet issued a decision on her administrative claim, she chose to file suit on her own rather than await the outcome of the *Monk* matter. Compl. ¶¶ 28-29, 45. Defendant did not join Plaintiff's motion to transfer. *See* ECF No. 33. On July 13, 2026, the Court issued an order setting August 10, 2026, as Defendant's deadline to object to the motion to transfer and to respond to the complaint by requesting a pre-filing conference for a motion to dismiss. ECF No. 36.

**B. Robinson's military service and family background[4]**

Plaintiff alleges that her father, Edward O. Robinson, was inducted into the U.S. Army on or about August 19, 1943, and entered into service on or about September 10, 1943. Compl. ¶¶ 1, 15. Robinson served in combat during World War II and received awards. *Id.* ¶¶ 16-17. While serving abroad, between 1943 and 1946, Robinson developed pilonidal disease and contracted

[4] Defendant does not concede the truth of any of the facts alleged in Plaintiffs' Complaint. While the Court must accept the allegations as true for purposes of the proposed facial challenges to the complaint, it may consider Defendant's evidence when reviewing the proposed factual challenge to standing. *See, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993).

syphilis; and he received treatment from the U.S. Army. *Id.* ¶¶ 18, 21. Robinson separated from the U.S. Army on January 20, 1946, with an Honorable Discharge.[5] *Id.* ¶ 23. Plaintiff Edwina Brown was born to her mother, Ernestine Robinson, and Robinson on December 24, 1946, with congenital syphilis. *Id.* ¶¶ 25-26. Plaintiff's diagnosis of congenital syphilis at birth alerted Robinson that the medical treatment he received while in service of the U.S. Army had not been effective in curing his syphilis. *Id.* ¶ 27.

### C. Robinson's and Plaintiff's lack of interactions with VA

Plaintiff alleges that Robinson filed a claim with VA in 1947 for service-connected disability benefits based on syphilis.[6] *Id.* ¶ 28. She additionally alleges that Robinson's claim was never processed or adjudicated. *Id.* She further alleges that, on or about November 13, 1950, Robinson filed a second claim with VA for service-connected disability benefits based on rectal abscesses. *Id.* ¶ 29. She alleges that the claim was assigned the following C-Number: C 16 372112.[7] *Id.* She alleges that Robinson's second claim was never processed or adjudicated. *Id.*

Plaintiff alleges that Robinson never received disability benefits from VA. *Id.* ¶ 30. He passed away on March 3, 1967. *Id.* ¶ 37. Following Robinson's death, his wife filed a claim that Plaintiff alleges was for service-connected death benefits in the form of a death pension. *Id.* ¶ 38.

[5] In contrast, Monk received an "Undesirable" discharge, also called a discharge "Under Other than Honorable" conditions, from the United States Marine Corps in 1970. *Monk* Am. Compl. ¶ 97. His father, on behalf of whose estate Monk also stands as plaintiff in that matter, received an honorable discharge from the U.S. Army in 1946. *Id.* ¶ 141.

[6] Plaintiff's allegations regarding her parents' communications with VA are made in support of her claims and are identified in this section. Plaintiff did not attach to the complaint any documentation of these communications, which she describes in the complaint as "claims" that Robinson filed, but they are nevertheless incorporated in the complaint by reference and the Court may consider them in connection with Defendant's proposed motion to dismiss.

[7] VA's proposed declarant will explain the significance of this number, which is not necessarily indicative of a disability benefits claim during Robinson's lifetime.

VA denied Mrs. Robinson's claim, stating that Robinson's death was not due to any disease or injury aggravated by his service. *Id.*

Explicitly contradicting these allegations, VA's staff has reviewed the available records and are expected to state that it does not appear that Robinson applied for the benefits alleged, nor that Plaintiff Brown applied for benefits from VA.

**D. Administrative claim, causes of action, and alleged harms**

Plaintiff alleges that, in or around May 2024, Plaintiff learned about VA's history of administering a racially discriminatory benefits systems that disfavored Black veterans, including her late father. *Id.* ¶ 43. Specifically, Plaintiff alleges that Black veterans were statistically more likely to have their disability claims denied than white veterans. *Id.* ¶ 8. On March 11, 2025, Plaintiff filed a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 267l-2680, with the U.S. Department of Veterans Affairs. *Id.* ¶ 44. The VA did not issue a decision on Plaintiff's claim prior to initiation of this suit. *Id.* ¶ 45.

Plaintiff filed her complaint in federal district court on January 12, 2026. Compl., ECF No. 1. As administratrix of Robinson's estate, Plaintiff seeks compensation for the negligent failure of VA leaders to redress a benefits system they knew or should have known was racially discriminatory, and which caused Robinson to suffer the distinct injury of racial discrimination. *Id.* ¶ 46. She also brings claims on her own behalf. The complaint alleges three causes of action against the United States pursuant to the FTCA: (1) Negligence, *id.* ¶¶ 47-52; (2) Negligent infliction of emotional distress, *id.* ¶¶ 53-59; and (3) Negligent supervision, *id.* ¶¶ 60-65.

Plaintiff alleges that Robinson struggled with the physical and psychological symptoms from his line of duty injuries, which were lifelong. *Id.* ¶ 30. Plaintiff alleges that, as a result of dealing with Defendant's racially discriminatory benefits system, Robinson suffered dignitary, emotional, reputational, and psychological harms that reverberated through his family. *Id.* ¶ 35.

Further, Plaintiff alleges that she also suffered dignitary, emotional, reputational, and psychological harm caused by Defendant's administration of a racially discriminatory benefits system. *Id.* ¶ 36.[8] She claims that VA's alleged "de facto" denial of Robinson's alleged 1947 and 1950 benefits claims deprived Robinson of needed income to treat Plaintiff's congenital syphilis. *Id.* ¶ 36.

Plaintiff insists that she "does not seek to relitigate her late father's benefits claims" but instead "seeks to recover for dignitary, emotional, and psychological harms suffered by her late father and herself caused by the negligence of VA leaders in addressing the racial disparities of which they knew or should have known, and which they had a duty to remedy." *Id.* ¶ 1. She requests compensatory damages, reimbursement of her costs and expenses, and other relief the Court believes is proper. Compl. at 12 (filed under ECF No. 3, PDF Page 7 of 7).

### E. The *Monk* litigation

The complaint in *Monk* was filed in 2022.[9] *Monk*, No. 3:22-cv-1503, ECF No. 1 (Nov. 28, 2022). The *Monk* amended complaint, which includes class allegations, was filed in June 2023. *Id.*, ECF No. 36 (June 5, 2023). As stated above, Monk's motion for class certification is due by November 14, 2027, approximately fifteen months from now. *Monk*, ECF No. 197.

---

[8] These claimed damages are somewhat different than the damages theory in *Monk*. Claims that sound in libel are precluded by the FTCA, § 2680(h). *See Dudley v. Soc. Sec. Admin.*, No. 3:23-cv-705, 2024 WL 3845758, at *6-7 (D. Conn. Aug. 16, 2024). In any event, it is unclear how Plaintiff or her father could have suffered reputational harm due to VA's nonadjudication of a claim. *See also* Note 5, above (addressing discharge status of each person).

[9] The Veterans Legal Service Clinic's landing page for *Monk v. U.S.* includes the following "banner" notice at the top of the page: "*If you are a Black veteran who is interested in filing a complaint against Veterans Affairs for maintaining a discriminatory benefits system, please read our FTCA FAQs for more information about how to submit a Federal Tort Claims Act administrative claim, including a sample form.*" Veterans Legal Services Clinic, *Monk v. U.S.*, at https://law.yale.edu/clinics/vlsc/monk-v-us (last visited Aug. 10, 2026) (typeface in original). *See also* Yale Law School, *Black Veteran Sues Over Racial Disparities in VA Benefits Administration*, Nov. 28, 2022, at https://law.yale.edu/yls-today/news/black-veteran-sues-over-racial-disparities-va-benefits-administration; A. Walker, YALE DAILY NEWS, *Law School clinic's discrimination case on behalf of Black veterans proceeds*, Apr. 15, 2024, at https://yaledailynews.com/articles/law-school-clinics-discrimination-case-on-behalf-of-black-veterans-proceeds.

Monk's claim challenges alleged statistical disparities in grant/denial rates for Black veterans' disability claims to VA, compared to white veterans. *See generally Monk* Am. Compl. As discussed below, the plaintiffs in *Monk* originally alleged disparities in education and housing benefits as well, but they have since dropped those claims. *See Monk* Am. Compl. ¶ 1; Def. Mot. to Dismiss, *Monk* ECF No. 179-1 at 2 n.4 (informing Court of the *Monk* Plaintiffs' narrowing of claims); Pl. Opp., *Monk* ECF No. 200 (not disagreeing).

Both Brown's and Monk's complaints are premised on the legal theory that VA could be liable under Connecticut tort law for administering federal benefits in a manner that produced racially disparate results. But, as explained in greater detail below, Plaintiff Brown's complaint raises issues that are not present in *Monk*, and vice versa. *See generally* Compl. & *Monk* Am. Compl.

## APPLICABLE LAW

### I. Local Rule 40, Assignments

The Local Civil Rules of the United States District Court for the District of Connecticut provide that the "place of assignment of a case will be determined by the Court in accordance with a general policy on assignments adopted from time to time by the active Judges of the Court in the interest of the effective administration of justice," and that "[a]ll cases will be assigned to a single Judge from filing to termination." L.R. 40(a)-(b). The Local Rule further provides:

> In the event that it is subsequently determined that there is pending in this District a related case assigned to a different Judge, the later-filed case should normally be transferred to the Judge having the earliest filed case that remains pending. The presiding Judge in a later-filed, **related case** will consider whether transfer is appropriate under the rule promptly after learning of an earlier-filed, related case pending before another Judge of this Court. Later-filed, **related cases** may be transferred by the presiding Judge, either sua sponte or upon motion of any party, with the consent of the transferee Judge.

L.R. 40(b)(1)a (emphasis added). The Local Rule does not define "related case."

## II. Relevant Precedent

Under the law of the Second Circuit and the District of Connecticut, to find two cases are "related" requires finding that they both involve the "same parties." *Tucker v. Am. Int'l Grp., Inc.*, 728 F. Supp. 2d 114, 120 n.16 (D. Conn. 2010). Additionally, in order to decide whether to apply the first-to-file rule, the court must ask the threshold question of "are the actions duplicative." *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 236 (D. Conn. 2003). When conducting this inquiry, the court "must be careful . . . not to be swayed by a rough resemblance between the two suits without assuring itself that . . . the claims asserted in both suits are also the same." *Aaron v. Mattikow,* 225 F.R.D. 407, 415 (E.D.N.Y. 2004); *Tucker*, 728 F. Supp. 2d at 121 n.18. Where the issues are not being litigated by the same parties, or are different,[10] the rule does not apply. *See Tucker*, 728 F. Supp. 2d at 121 (declining to transfer case from Judge Charles S. Haight to Judge Underhill where parties were different and issues were different).

## ARGUMENT

Plaintiff's conclusory motion to transfer pursuant to D. Conn. L. Civ. R. 40 should be denied. The motion does not establish that this matter and *Monk* are "related" within the meaning of the Local Rules and the law of this district. It cites no case law setting forth a standard for the predicate question of what it means to be related—only law on the second-step question whether the case, once it has been found to be related, should be transferred. The law on "relatedness"

[10] In 2010, the Court in *Tucker* noted that the Second Circuit had not enunciated a standard of "substantial overlap" in "first to file" cases, unlike the Fifth Circuit. *Tucker*, 728 F. Supp. 2d at 123. Defendant's research revealed nothing suggesting that the Second Circuit has changed its position in this respect during the intervening sixteen years.

and/or the "first-to-file" rule in the district is clear. Neither the law nor the facts support Plaintiff's request.[11]

## I. The parties are not identical

First, this case and *Monk* do not involve the same parties. Courts have declined to apply the first-to-file rule where the parties to the two actions are not identical. *See, e.g.*, *Tucker*, 728 F. Supp. 2d at 121; *Van Zwinnen v. S.S. "EVER GRAND"*, Nos. 92 Civ. 7142 (JFK), 92 Civ. 7609 (JFK), 1994 WL 465918, at *3–4 (S.D.N.Y. Aug. 24, 1994) (rejecting "first-to-file" argument to transfer where parties to the actions were "not identical"); *United States v. Int'l Broth. of Teamsters,* 708 F. Supp. 1388, 1403 (S.D.N.Y. 1989) (holding first to file rule inapposite where "parties in the two cases are different"); *see also In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992) (noting that first to file rule usually applies when "identical or substantially similar parties" are present in both courts). The United States is a party in both cases, but Brown and the *Monk* plaintiffs are different people.

The class allegations in *Monk* do not alter this conclusion. The *Monk* class is alleged to include "All Black applicants for veterans' benefits administered by the Department of Veterans Affairs or its predecessor at any time since January 1, 1945 and who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675." This purported class definition would appear to include Robinson, if he had applied for veterans benefits—but the

[11] Plaintiff's motion does not request discretionary transfer pursuant to 28 U.S.C. § 1404. Even if that basis were not waived, it would nevertheless fail on its substance. "Factors to be considered in determining whether a section 1404(a) transfer is warranted include convenience of the parties and witnesses, availability of process to compel unwilling witnesses to testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice." *Tucker*, 728 F. Supp. 2d at 126. As in *Tucker*, the proposed transfer is intra-district and "would merely result in a change of courtrooms rather than an increase or decrease in convenience or a change of law." *Id.* at 128. Such neutral factors do nothing to satisfy Plaintiff's burden to demonstrate by clear and convincing evidence that transfer is justified under the circumstances. *See id.* at 127-28. The "interests of justice" are minimal, for the reasons discussed below in connection with the Local Rule 40 standard, and also do not weigh convincingly in favor of transfer.

record evidence that Defendant will submit with its proposed motion to dismiss shows that he did not. And oddly, if Brown had filed with VA an application for veterans' benefits, the *Monk* purported class definition also would include her—notwithstanding that she herself is not a veteran, did not serve in the U.S. military, and likely had no independent entitlement to apply for benefits. In any event, Plaintiff Brown does not allege that she herself ever applied for VA benefits. *See* Compl. ¶¶ 28-29 (regarding Robinson's alleged claims). Plaintiff Brown's attenuated relationship with VA is at the root of Defendant's third proposed basis for challenging her standing—that she is not a person to whom VA owed a duty of care.

In any event, no class has been certified in *Monk*, motions respecting class certification are not due until late 2027, and the issue will not be fully briefed until early 2028. *Monk*, No. 3:22-cv-1503, ECF Nos. 192 & 197. Critically, for purposes of this objection to Plaintiff Brown's motion to transfer, the *Monk* amended complaint alleges a class pursuant to Federal Rule of Civil Procedure 23(b)(3). *Monk*, No. 3:22-cv-1503, ECF No. 36 ¶ 195 (June 5, 2026) ("Plaintiffs bring their claims under Federal Rule of Civil Procedure 23(b)(3)."). Members of a (b)(3) class may request exclusion from any proposed class settlement, *i.e.*, they may "opt out." At this point, it is entirely speculative to claim that any proposed class in *Monk* would be certified, let alone that Plaintiff, in her own capacity or as the administratrix of her father's estate, would be a *Monk* class member. Even if she were, Plaintiff Brown instead chose to file her own FTCA action, as was her right.

For these reasons, the first inquiry under Rule 40 fails—the parties are not identical and there is no basis to transfer this action.

**II. There are substantial differences in the issues raised in each case**

Second, neither do the cases litigate the same issues. The Veterans Legal Clinic, which represents *Monk*, apparently declined to represent Plaintiff and told her that her claim was

"another legal matter"—a statement in tension with counsel's present representation in this case that the matters are related. The cases are apparently premised on the same or similar novel theories of the VJRA, Connecticut tort law, and the FTCA, and both plaintiffs claim emotional distress as their only or main injury. *See* ECF No. 33 at 3. But this is not the meaning of "related" under the Local Rules.[12] Critically, the government's arguments respecting standing, addressed in its concurrently-filed letter-brief, are specific to Plaintiff; and are entirely independent of the facts of *Monk*. Likewise, Defendant's proposed challenge to Plaintiff's "reputational harm" claim is premised on alleged facts unique to her father, which are different than the facts alleged in *Monk*.[13]

Defendant also objects to Plaintiff's and Monk's attorneys' suggestion that the interests of justice favor transfer, or that Judge Underhill has specialized familiarity with "overlapping questions of law," ECF No. 33 at 3, compared to Judge Oliver. Defendant is not aware of any rule in the District that suggests that any judge is more specialized in or familiar with questions of standing or tort law (especially respecting foreseeability and duty) than any other judge.[14] If

---

[12] If it were, one can easily imagine the absurd results that would follow. For example, all cases filed by people incarcerated at the Federal Correctional Institution in Danbury, Connecticut, which named the Warden and challenged the prisoner's term of confinement under the First Step Act, would be "related" and subject to transfer to whichever district court judge was assigned the first one.

[13] *See* Note 5, above (addressing discharge status of each person).

[14] Monk's counsel and counsel for Plaintiff must walk a fine line when they characterize the legal issues in *Monk* as novel in any way, since it is black letter law that the "**FTCA does not create new causes of action**." *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996) (emphasis added) (addressing 28 U.S.C. § 2574 and *Rayonier Inc. v. United States,* 352 U.S. 315, 319 (1957)); *see also Monk*, 2024 WL 1344712, at *2 (quoting *Dorking*).

Monk's counsel have walked close to this line multiple times in the past. In the months after filing the lawsuit, Michael Sullivan, counsel for Monk, described the *Monk* suit as a "very novel lawsuit." WHERE WE LIVE, Connecticut Public Radio, *Report finds racial disparities persist in military discharge*, at timestamp 9:42, Jan. 13, 2023, *at* https://www.ctpublic.org/show/where-we-live/2023-01-13/report-finds-racial-disparities-persist-in-military-discharge; *see also* A. Walker, YALE DAILY NEWS, *Law School clinic's discrimination case on behalf of Black veterans proceeds*, Apr. 15, 2024, at https://yaledailynews.com/articles/law-school-clinics-discrimination-case-on-behalf-of-black-veterans-proceeds (quoting counsels comments respecting *Monk*).

Here, both Monk's and Brown's counsel have attempted to walk a similar line in the notices filed in this

*(Continued)*

the claims in *Brown* are considered specialized because they invoke various forms of veterans benefits, require a careful review of VA's records respecting benefits claims, and invoke the adjudicatory history of a claim or lack thereof (as addressed below and in Defendant's letter brief), that could suggest that the VJRA's preclusion provisions should establish the VA's Board of Veterans' Appeals, rather than the U.S. District Court, as the appropriate forum for the claims.

Plaintiff filed her own complaint and lawsuit; she did not copy-paste Monk's complaint as her own. The substance of Plaintiff's complaint shows great divergence from Monk's claims. In connection with the benefits applications that she claims VA never adjudicated, Plaintiff's complaint includes grievances about her housing as a child, and allegations about discrimination in housing and education. *See* Compl. ¶¶ 6, 32-34, 41. In contrast, Monk has disclaimed that his claims relate to housing and education benefits—such issues were included in the Amended Complaint, but counsel informed the government by email on March 13, 2026, that moving forward Monk would limit claims to disability benefits only.[15] The Court's citation to and discussion of *Monk* in *Brown* ECF No. 11 were done for the purpose of deciding her IFP petition; the case was used to demonstrate that Plaintiff's action did not fall below the low bar of 28 U.S.C. § 1915(e)(2)(B). It is not dispositive or even material respecting the instant transfer request.

Additionally, Plaintiff's complaint references her mother's application for "death benefits." The VA's available records reflect that, instead, Plaintiff's mother submitted a claim after Robinson's death for "pension/DIC payments," meaning Dependency and Indemnity

matter that claim "relatedness." They cannot assert that this tort claim against the government is unique or new, yet they argue it is special enough that *Brown* must be transferred.

[15] *See* Def. Mot. to Dismiss, *Monk* ECF No. 179-1 at 2 n.4 (informing Court of the *Monk* Plaintiffs' narrowing of claims); Pl. Opp., *Monk* ECF No. 200 (not disagreeing).

Compensation. Although the latter benefits derive from a veteran's service-connected disability, VA does not consider DIC a form of "disability benefit." The former type of benefit Mrs. Robinson applied for, "pension," is a service-related benefit independent of any disability of the veteran. Neither Monk nor any of the other named plaintiffs in the *Monk* suit alleged that they sought survivor benefits.

Finally, Brown's allegation of "failure to adjudicate" a benefits claim is not at issue in *Monk*. The plaintiffs in *Monk* allege that they applied for disability benefits and got a decision—affirmative or negative. Even if Plaintiff was correct that her father filed a claim for benefits, if her father's claim was **never denied or approved**, it is hard to see how the statistical grant/denial rate for Black veterans' claims, which undergirds the *Monk* litigation, is even relevant to her claims. Unlike in *Monk*, this case appears to raise a "failure to process" claim—a basis for preclusion under the VJRA.

A review of district court precedent shows how claims can have a "rough resemblance" and yet be different in critical ways. Judge Underhill's ruling in *Monk* is dissimilar to Judge Vanessa Bryant's earlier ruling in *Peruta v. United States*, No. 3:16-cv-2112-VLB, 2018 WL 995111 (D. Conn. Feb. 21, 2018). In *Peruta*, the plaintiff raised claims in tort following the Veterans Administration's concededly-improper administration of his benefits claims. *Id.* at *1. Judge Bryant dismissed the claims for lack of subject matter jurisdiction pursuant to the Federal Tort Claims Act's private analog doctrine. *Id.* at *3. In *Monk*, Judge Underhill permitted tort claims against under similar circumstances and found the private analog doctrine was no bar. *Monk v. United States*, No. 3:22-cv-1503 (SRU), 2024 WL 1344712, at *7 (D. Conn. Mar. 29, 2024), *motion to certify appeal denied*, No. 3:22-CV-1503 (SRU), 2025 WL 473590 (D. Conn. Feb. 12, 2025). Notably, Judge Underhill found that the claims in *Peruta* and *Monk* were not

similar, although both alleged a tort against VA for harm arising from the manner in which it processed claims. *See Monk*, 2025 WL 473590, at *9. Here, the Court could reach a similar conclusion and find that *Brown* and *Monk* are not related.

FTCA claims, by nature, seek recovery for personal injury or property damage. Plaintiff chose to file suit on her FTCA administrative claim after six months had passed since presentment, as was her right. She does not allege that her claim requires a successful outcome in *Monk* to be independently cognizable. That some FTCA suits may include factual allegations bearing similarities does not render those cases "related."

For the reasons stated, Defendant objects to the motion to transfer this matter.

## CONCLUSION

Because the parties are different and the issues are different than in *Monk v. United States*, this case should not be found to be a "related matter" to that matter and should not be transferred.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
Natalie N. Elicker (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov