**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| EDWINA BROWN, *on her own behalf and as administratrix and sole beneficiary of the Estate of Edward O. Robinson,*<br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant*. | No. 3:26-cv-59 (SRU)<br><br>September 11, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**Table of Contents**


Table of Contents ........ 1
INTRODUCTION ........ 2
BACKGROUND ........ 3
I. Statutory and Regulatory Background ........ 3
  A. Veterans Benefits ........ 3
  B. The Federal Tort Claims Act ........ 4
II. Procedural and Factual Background ........ 5
  A. Procedural history ........ 5
  B. Robinson's military service and family background ........ 6
  C. Robinson's and Plaintiff's lack of interactions with VA ........ 7
  D. Administrative claim, causes of action, and alleged harms ........ 8
  E. The *Monk* litigation ........ 10
STANDARD OF REVIEW ........ 11
I. Rule 12(b)(1) ........ 11
II. Rule 12(b)(6) ........ 12
III. Rule 12(f) ........ 13
ARGUMENT ........ 13
I. Plaintiff lacks standing. ........ 13
  A. Plaintiff fails to show constitutional standing ........ 14
  B. Plaintiff fails to show prudential standing ........ 16
II. The court lacks subject matter jurisdiction pursuant to the VJRA. ........ 17
  A. The VJRA provides an exclusive jurisdictional process over questions affecting provision of benefits. ........ 17
  B. Plaintiff's claims must be dismissed because they would require the Court to make benefits-related determinations. ........ 19
III. Any harm to Plaintiff caused by VA's alleged tortious conduct was not a breach of duty owed to her nor reasonably foreseeable. ........ 23
IV. Plaintiff's complaint is untimely. ........ 29
V. Plaintiff's claims for reputational harm must be struck or dismissed ........ 34
CONCLUSION ........ 36

## INTRODUCTION

Plaintiff seeks money damages from the United States of America under the Federal Tort Claims Act (FTCA) for alleged emotional harm caused by a federal agency, the Department of Veterans Affairs (VA or the Agency), that she claims was negligent in failing to produce equal outcomes with respect to Black veterans in federal benefits determinations. She brings claims in her personal capacity and as the administratrix and sole beneficiary of the estate of her father, Edward O. Robinson. Robinson is a Black veteran who served in the U.S. Army in World War II.

Plaintiff's claims must be dismissed for several independent and sufficient reasons under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3). First, Plaintiff lacks standing, because contrary to her allegations, VA has no documents indicating that her father or she (a non-veteran) ever submitted claims to VA for benefits. *See* Declaration of Jessica Brand dated Sept. 10, 2026. Thus, all of her claims must be dismissed under Rule 12(b)(1) and 12(h)(3).

Second, even if the Court assumes that Plaintiff's father did claim benefits from VA as alleged, the Veterans Judicial Review Act (VJRA) strips this Court of subject matter jurisdiction over Plaintiff's complaint because it challenges only purported failures to adjudicate benefits claims. This VJRA flaw is distinct from the argument the government raised in *Monk v. United States*, No. 3:22-cv-1503 (SRU), ECF Nos. 23 & 66 (D. Conn.),[1] because the benefits claims of the *Monk* plaintiffs were adjudicated. But this complaint's challenge is premised on alleged

[1] The United States incorporates by reference the jurisdictional challenges it initially raised in the first motion to dismiss in *Monk*, but recognizes that, since the Court has not permitted an appeal of its ruling against the government, the Court would similarly deny those arguments here. *See Monk*, 2024 WL 1344712 (Mar. 29, 2024), *motion to certify appeal denied*, 2025 WL 473590 (Feb. 12, 2025). In addition, if the Court grants any part of the second motion to dismiss in *Monk* that is currently pending a ruling—*see Monk*, No. 3:22-cv-1503 (SRU), ECF Nos. 179, 200 & 207— all of those arguments save the one concerning plaintiff NVCLR would also apply in favor of dismissal here. The jurisdictional arguments raised in the body of this motion, however, are independent of the government's arguments thus far in *Monk*.

failures to timely process benefits claims, and ample case law precludes district court subject matter jurisdiction under such circumstances.

Third, any harm to Plaintiff—who never applied for any VA benefits—caused by VA's alleged tortious conduct was not a breach of duty owed to her nor reasonably foreseeable. Therefore, Plaintiff's claim made in her personal capacity is not cognizable under Connecticut tort law and should be dismissed under Rule 12(b)(1), or in the alternative Rule 12(b)(6).

Fourth, the complaint is untimely. Plaintiff's claims accrued long ago. *Monk's* holding respecting timeliness, 2024 WL 1344712, at *12-13, does not apply because the statistical analysis upon which the Court relied is irrelevant to a benefits claim that was never adjudicated, if it did exist. Additionally, she does not allege any interactions with VA within the two years preceding her administrative tort claims to VA, let alone any violation by VA within that time. In fact, her father passed away in 1967—and VA's evidence is that there were no claims before his death. The statute of limitations has lapsed, and the complaint accordingly should be dismissed under Rule 12(b)(6).

Finally, Plaintiff's allegations regarding "reputational" injury, *see e.g.*, Compl. ¶¶ 35-36, 52, should be struck from the complaint under Rule 12(f) or, to the extent these allegations attempt to bring a claim of libel or slander, dismissed under Rule 12(b)(1), because the FTCA does not waive sovereign immunity for those claims.

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. Veterans Benefits

Congress enacted Title 38 of the U.S. Code to create a system for providing veterans with benefits and created the position of Secretary of Veterans Affairs (Secretary), a cabinet-level,

executive official, to oversee such benefits. Veterans who receive an "honorable" discharge from the military are generally eligible for VA benefits unless a statutory bar applies. 38 U.S.C. § 5303; 38 C.F.R. § 3.12.[2] Congress also provided—through the VJRA—that the Secretary's decisions respecting benefits are final and subject to limited review:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and *may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise*.

38 U.S.C. § 511(a) (emphasis added). That limited review begins with VA's Board of Veterans' Appeals, progresses (if at all) through the Court of Appeals for Veterans Claims and the Court of Appeals for the Federal Circuit, and ends with the Supreme Court, *see* 38 U.S.C. §§ 7104, 7105, 7252, 7292.

### B. The Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity by the United States for claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA contains numerous exceptions to its limited waiver of sovereign immunity and does not provide

[2] *See also* 38 U.S.C. § 101(2) (defining "veterans" for benefit eligibility as individuals who were discharged from service "under conditions other than dishonorable"). Congress did not provide any means for the VA to alter a former servicemember's discharge status. Only military branches, and their associated administrative boards, can determine and/or alter discharge status.

damages for all injuries caused by government employees. *See* 28 U.S.C. § 2680; *see also e.g.*, *Feres v. United States*, 340 U.S. 135, 146 (1950) (declining to extend FTCA liability for injuries to servicemen arising out of or in the course of activity incident to military service). State law provides the "law of the place" under the FTCA. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA.").

## II. Procedural and Factual Background

### A. Procedural History

On January 12, 2026, Plaintiff Edwina Brown filed her complaint *pro se*, moved to proceed *in forma pauperis* (IFP), and moved for the appointment of counsel. ECF Nos. 1-3. In support of her request for appointed counsel, she disclosed that she had contacted the "Yale School of Law Veterans Clinic" on October 1, 2025, and that the Clinic declined to assist her because "the Clinic did not have resources to take on another legal matter but stated it would add [her] to a list to seek possible pro bono representation." *See* ECF No. 3, at 3-4.

On April 15, 2026, a group of attorneys (including some from the Veterans Clinic of the Jerome N. Frank Legal Services Organization at Yale Law School) wrote a letter to the then-presiding District Judge, Vernon D. Oliver. ECF No. 17. The attorneys do not represent any party in this matter; they represent the plaintiffs in *Monk v. United States*, No. 3:22-cv-1503 (SRU). In the letter, the attorneys claimed that Brown's case and *Monk* are sufficiently related that Brown's matter should be "*sua sponte*" reassigned to this Court, which presides over the *Monk* case. *Brown*, ECF No. 17. The following day, the same attorneys docketed a letter in the *Monk* matter, which stated: "Regardless of which judge adjudicates the *Brown* case, under the first-filed rule, it is likely that a stay of the *Brown* litigation pending disposition of the motion for class certification in *Monk* would be appropriate." *Monk*, ECF No. 176. The proposed class definition in *Monk* is "All Black applicants for veterans' benefits administered by the Department of

Veterans Affairs or its predecessor at any time since January 1, 1945 and who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675." *Monk*, Am. Compl., ¶ 195, ECF No. 36. Plaintiff Monk's motion for class certification is due by November 14, 2027, and briefing on class certification is not set to be completed until January 14, 2028. *Monk*, ECF Nos. 192 & 197.

On June 29, 2026, through appointed *pro bono* counsel, Plaintiff Brown filed her own notice of related case and motion to transfer, in which she requested that her case be reassigned to this Court. ECF Nos. 31-33. Plaintiff stated that as the administratrix of her father's estate, she is a member of the proposed class in *Monk*, ECF No. 33 at 3, notwithstanding that: she brings claims that are not or are no longer at issue in *Monk*, and she chose to file suit on her own rather than await the outcome in *Monk*. Defendant did not join Plaintiff's motion to transfer. *See* ECF No. 33. On July 13, 2026, Judge Oliver issued an order setting August 10, 2026, as Defendant's deadline to object to the motion to transfer and to file a letter brief requesting permission to move to dismiss the complaint. ECF No. 36.

On August 10, 2026, the Defendant objected to transferring the case and filed its letter brief. On August 11, 2026, Judge Oliver overruled Defendant's objection and granted Plaintiff's motion to transfer. On August 13, 2026, the case was transferred to this Court. On August 26, 2026, the Court ordered Defendant to file this motion to dismiss by September 11, 2026. ECF No. 42.

**B. Robinson's military service and family background[3]**

Plaintiff alleges that her father, Edward O. Robinson, entered into service in the U.S. Army on or about September 10, 1943. Compl. ¶¶ 1, 15. Robinson served in combat during

[3] Defendant does not concede the truth of any of the facts alleged in Plaintiff's complaint. While the Court must accept the allegations as true for purposes of Defendant's facial challenges to the complaint, it may consider Defendant's evidence when reviewing Defendant's factual challenge to standing. *See, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993).

World War II and received awards. *Id.* ¶¶ 16-17. While serving abroad, between 1943 and 1946, Robinson developed pilonidal disease and contracted syphilis; and he received treatment from the U.S. Army. *Id.* ¶¶ 18, 20-21. Robinson separated from the U.S. Army on January 20, 1946 with an Honorable Discharge.[4] *Id.* ¶ 23. Plaintiff Edwina Brown was born to her mother, Ernestine Robinson, and Edward Robinson on December 24, 1946, with congenital syphilis. *Id.* ¶¶ 25-26. Plaintiff claims that her diagnosis of congenital syphilis at birth alerted Robinson that the medical treatment he received while in the U.S. Army had not been effective in curing his syphilis. *Id.* ¶ 27.

### C. Robinson's and Plaintiff's lack of interactions with VA

Plaintiff alleges that Robinson filed a claim with VA in 1947 for "service-connected disability benefits based on syphilis.[5] *Id.* ¶ 28. She also alleges that Robinson's claim was never processed or adjudicated. *Id.* She further alleges that, on or about November 13, 1950, Robinson filed a second claim with VA for service-connected disability benefits based on rectal abscesses. *Id.* ¶ 29. She alleges this claim was assigned the following "C-Number": C 16372112. *Id.* Plaintiff alleges this second claim was never processed or adjudicated. *Id.*

Plaintiff alleges that Robinson never received disability benefits from VA. *Id.* ¶ 30. He passed away on March 3, 1967. *Id.* ¶ 37. Plaintiff alleges that, following Robinson's death, Ernestine Robinson filed a claim with VA for "service-connected death benefits in the form of a

---

[4] In contrast, Monk, Jr., received an "Undesirable" discharge, also called a discharge "Under Other than Honorable" conditions, from the United States Marine Corps in 1970. *Monk* Am. Compl. ¶ 97. Monk, Sr., received an honorable discharge from the U.S. Army in 1946. *Id.* ¶ 141.

[5] Plaintiff's allegations regarding her parents' communications with VA are made in support of her claims and are identified here in Background Section II.C. Plaintiff did not attach to the complaint any documentation of these communications, which she describes in the complaint as "claims" that Robinson filed, but they are nevertheless incorporated into the complaint by reference and the Court may consider them. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

death pension." *Id.* ¶ 38. She alleges that VA denied Ernestine Robinson's claim, stating that Robinson's death was not due to any disease or injury aggravated by his service. *Id.*

Explicitly contradicting these allegations, VA's staff has performed a diligent search for and review of the documents in Robinson's "C-file" in VA's Veterans Benefits Management System (VBMS). Declaration of Jessica Brand ¶ 3. A veteran's C-file contains "all records submitted" to VA by Robinson, the Department of War, or a third party after Robinson's passing. *Id.* And VBMS contains the "only records in VA's possession, custody, or control, related to Mr. Robinson's C-file." *Id.* VA found no documents that indicate Robinson ever submitted a claim for benefits to VA during his lifetime. *Id.* ¶¶ 3, 6. The document Plaintiff references in her complaint from 1950 with a "C-number," Compl. ¶ 42, does not indicate that Robinson made a claim for benefits, but rather that a C-number was assigned to Robinson for "filing purposes" when his record and report of separation was received by VA in 1946. Brand Decl. ¶ 5. C numbers were assigned to veteran files prior to the prevalence of Social Security Numbers. *Id.* VA staff additionally found no documents indicating that Plaintiff Edwina Brown submitted a claim for benefits to VA either. *Id.* ¶ 7. VA's records also reflect that Plaintiff Brown's mother, Ernestine Robinson, submitted a claim after Robinson's death for "Death Pension or Dependency and Indemnity Compensation" for Plaintiff Brown's siblings. *Id.* ¶¶ 9-10. No such claim was made for Plaintiff Brown, who was over 18 years old at the time. *Id.* VA denied service-connected death benefits to Plaintiff Brown's siblings, because it determined that Robinson's death was not due to any disease or injury incurred or aggravated by his service, but it granted Death Pension benefits to Plaintiff Brown's siblings. *Id.*

**D. Administrative claim, causes of action, and alleged harms**

Plaintiff asserts that she filed a FOIA request with VA in 2023 to obtain "documentation" about her father's service and benefits claims. Compl. ¶ 41; ECF No. 3 at 5 ¶ 15. She also

contacted the National Personnel Records Center and a VA Regional Office in 2023. Compl. ¶ 40; ECF No. 3 at 5 ¶ 15. Yet, Plaintiff alleges that it was "in or around May 2024, that she learned about VA's alleged history of administering a racially discriminatory benefits systems that disfavored Black veterans." Compl. ¶ 43. Plaintiff's motion for appointment of counsel states that she communicated with the Yale Law School Veterans Clinic as early as November 2024. ECF No. 3 at 3 ¶ 13.

Like the plaintiffs in *Monk*, Plaintiff Brown alleges that Black veterans were statistically more likely to have their disability claims denied than white veterans. Compl. ¶ 8. In March 2025, approximately two and a half years after the *Monk* litigation commenced, Plaintiff filed a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680, with the "U.S. Department of Veterans Affairs." *Id.* ¶ 44. She alleges that VA received her administrative claim on March 31, 2025. *Id.* ¶ 45. VA did not issue a decision on Plaintiff's claim prior to Plaintiff filing suit. *Id.*

Plaintiff filed this complaint in federal district court on January 12, 2026. Compl., ECF No. 1. As administratrix of Robinson's estate, Plaintiff seeks compensation for the alleged negligent failure of VA leaders to redress a benefits system they knew or should have known was racially discriminatory, and which caused Robinson to experience racial discrimination. *Id.* ¶ 46. She also brings claims on her own behalf. The complaint alleges three causes of action against the United States pursuant to the FTCA: (1) Negligence, *id.* ¶¶ 47-52; (2) Negligent infliction of emotional distress, *id.* ¶¶ 53-59; and (3) Negligent supervision, *id.* ¶¶ 60-65.

Plaintiff alleges that Robinson struggled during his life with the physical and psychological symptoms from his line of duty injuries. *Id.* ¶ 30. Plaintiff alleges that "as a result of dealing with Defendant's racially discriminatory benefits system," Robinson suffered

dignitary, emotional, reputational, and psychological harms. *Id.* ¶ 35. Further, Plaintiff alleges that she also suffered dignitary, emotional, reputational, and psychological harm caused by Defendant's negligent administration of a racially discriminatory benefits system. *Id.* ¶ 36. She claims that VA's purported "de facto denial" of Robinson's alleged 1947 and 1950 benefits claims deprived Robinson of income needed to treat Plaintiff's congenital syphilis. *Id.* ¶ 36.

Plaintiff insists that she "does not seek to relitigate her late father's benefits claims" but instead "seeks to recover for dignitary, emotional, and psychological harms suffered by her late father and herself caused by the negligence of VA leaders in addressing the racial disparities of which they knew or should have known, and which they had a duty to remedy." *Id.* ¶ 1. She requests compensatory damages, reimbursement of her costs and expenses, and other relief the Court believes is proper. Compl. at 12 (filed at ECF No. 3, PDF Page 7 of 7).[6]

### E. The *Monk* litigation

The complaint in *Monk* was filed in 2022. *Monk*, No. 3:22-cv-1503, ECF No. 1 (Nov. 28, 2022). The *Monk* amended complaint, which includes class allegations, was filed in June 2023. *Id.*, ECF No. 36 (June 5, 2023). As stated above, Monk's motion for class certification is due by November 14, 2027, approximately fourteen months from now. *Monk*, ECF No. 197. Monk challenges alleged statistical disparities in grant/denial rates for Black veterans' disability claims to VA, as compared to white veterans. As discussed below, the plaintiffs in *Monk* originally alleged disparities in education and housing benefits as well but have since dropped those claims. *See Monk* Am. Compl. ¶ 1; Def. Mot. to Dismiss, *Monk* ECF No. 179-1 at 2 n.4 (informing

[6] Although Plaintiff does not specify a damages amount in her Complaint, her potential damages cannot be greater than the sum certain presented in her administrative claims. 28 U.S.C. § 2675(b). Plaintiff's administrative claim alleged damages of $4 million for herself and $4 million for the estate of her father. By contrast, Monk, Jr. alleged damages of $1 million for each of himself and the estate of his father.

Court of the *Monk* Plaintiffs' narrowing of claims); Pl. Opp., *Monk* ECF No. 200 (not disagreeing). The *Monk* plaintiffs make no allegations about survivor benefits.

Both Brown's and Monk's complaints are premised on the legal theory that VA could be liable under Connecticut tort law for administering federal benefits in a negligent manner that produced racially disparate results.[7] But, as explained in greater detail below, Plaintiff Brown's complaint raises issues that are not present in *Monk* and should be dismissed on those distinct bases. [8]

## STANDARD OF REVIEW

### I. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *See Gunn v. Minton*, 568 U.S. 251, 256 (2013). A party cannot waive a defect to subject matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).

On a facial Rule 12(b)(1) motion, a "district court must take all uncontroverted facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting

---

[7] In light of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023), it is an open question what agency policies, if any, could be implemented legally to try to alter benefits grant rates based on the race of applicants.

[8] Unlike Plaintiff Brown, the first named plaintiff in *Monk* is himself a Black veteran who applied for and now receives disability benefits from VA. *See generally Monk v. United States*, No. 3:22-cv-1503 (SRU) (D. Conn.). Both Plaintiff Brown and Conley Monk, Jr., bring claims on behalf of the estates of their deceased veteran fathers, who they allege did not receive VA disability benefits, but there are material differences between the two. Monk, Jr., alleges that VA denied his father, Monk, Sr., disability benefits on a substantive basis, *i.e.*, that his disability rating was less than 10%. *Monk*, Am. Compl. ¶¶ 142, 149, ECF No. 36. Further, he alleges that VA denied Monk, Sr.'s claim for benefits to care for a dependent person with only a "cursory explanation." *Id.* ¶ 143. In contrast, Plaintiff Brown alleges that VA never acted on her father's benefits claims. *Brown*, Compl. ¶¶ 28-29.

jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). On a fact-based Rule 12(b)(1) motion, the defendant may proffer evidence beyond the pleading. *See, e.g., Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In opposition to such a motion, the plaintiff must come forward with evidence of her own to controvert that presented by the defendant "'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems'" in the assertion of jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citation omitted). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*; *Tandon*, 752 F.3d at 243. "The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243.

## II. Rule 12(b)(6)

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]o survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient to raise a right to relief above the speculative level." *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs

have a valid claim for relief." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks omitted).

### III. Rule 12(f)

A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To succeed on a Rule 12(f) motion, the Defendant must show: "(1) that no question of fact which might allow Plaintiff's claim to proceed exists; (2) that no substantial question of law, a resolution of which would help the Plaintiff's claim succeed, exists; and (3) that it is prejudiced by the inclusion of the claim." *See Wyeth v. King Pharms., Inc.*, 396 F. Supp. 2d 280, 293 (E.D.N.Y. 2005); *County Vanlines, Inc. v. Experian Information Solutions, Inc.,* 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

## ARGUMENT

### I. Plaintiff lacks standing

Plaintiff lacks standing because VA records indicate that neither she nor her father ever filed with VA any claim, request, or application for benefits of any kind.[9] Brand Decl. ¶¶ 3, 6, 7. To properly invoke the jurisdiction of a federal court, a litigant must have standing to assert his claims. *See, e.g.*, *Bennett v. Spear,* 520 U.S. 154, 162 (1997); *Lujan v. Defs. of Wildlife*, 504 U.S.

[9] As discussed above, to review Defendant's "speaking motion," the Court can and must consider evidence. *See San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary . . . . The standards applicable to a Rule 12(b)(1) speaking motion differ greatly from the standards for ruling on a motion for summary judgment. Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56. **No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims**. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.") (emphasis added).

555, 559–61 (1992). Standing is a subject matter jurisdiction requirement. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). The question of standing "'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Spear*, 520 U.S. at 162 (citation omitted). This case fails in both respects.

### A. Plaintiff fails to show constitutional standing for any claim

"'[T]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches'" and "ensure that federal courts do not exceed their authority . . ." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

"To demonstrate injury in fact, a plaintiff must show the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560). To satisfy the particularity requirement, the plaintiff must show that the defendant's actions or inactions "injured her in a way distinct from the body politic." *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-40 (1972)); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006). A plaintiff lacks standing where his case is "a vehicle for the vindication of the value interests of concerned bystanders" or the public at large. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *In re U.S. Cath. Conf. (USCC)*, 885 F.2d 1020, 1026 (2d Cir. 1989) (holding clergy lack standing because their "complaint collapses into that of an offended bystander, insufficient to meet Article III's standing requirements.").

All of Plaintiff's claims, whether made in her personal or representative capacities, fail to satisfy the first prong for constitutional standing – she has shown a particularized injury in fact. Plaintiff does not allege that she herself filed any claims with VA. Indeed, Plaintiff does not even allege any *interactions* that she herself had with VA. And, as set forth in the sworn Declaration of Jessica Brand, VA documents indicate that neither Robinson nor Plaintiff ever filed claims for benefits with VA. Brand Decl. ¶¶ 3, 6-7. Because neither Plaintiff nor her father made any claims to VA for benefits, neither Plaintiff nor her father's estate could possibly have experienced any particularized injury caused by VA and its alleged discriminatory administration of benefits. In other words, Plaintiff cannot show that Defendant's actions or inactions "injured her in a way distinct from the body politic." *Strubel*, 842 F.3d at 188. Without any particularized injury at stake, Plaintiff's claims are nothing more than a generalized grievance seeking the vindication of the "value interests of concerned bystanders" or the public at large. *Valley Forge Christian Coll.*, 454 U.S. at 473. For standing purposes, she is no differently situated than any other person, and this entire case should be dismissed for failure to satisfy Article III standing.

Nor can Plaintiff establish the second prong necessary for constitutional standing, that the a plaintiff's claimed injury be "fairly traceable to the challenged conduct" by VA. *Spokeo*, 578 U.S. at 338. Any injury Plaintiff does claim is not fairly traceable to the actions of VA, because again, neither she nor her father submitted any claims for benefits. "The traceability requirement focuses on whether [a plaintiff's] asserted injury could have been a consequence of the actions of the defendant rather than being attributable to the 'independent' acts of some other person not before the court." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (citing *Lujan*, 504 U.S. at 560). Without the submission of any claims, Plaintiff has not shown a sufficient factual connection between Plaintiff's circumstances and VA's alleged discriminatory administration of

benefits to establish standing. *See e.g., Mullins v. Novatech,* 1:24-cv-00824 (VSB) (SDA), 2025 WL 4376336, at *7 (S.D.N.Y. Dec. 23, 2025) (holding that where a complaint did not contain "any allegations of interactions between Plaintiff . . . and any of the moving defendants," there was no standing). There is no case or controversy between the parties here, and the case should be dismissed.

### B. Plaintiff fails to show prudential standing with respect to individual capacity claims

Allowing Plaintiff Brown to pursue claims made on her own behalf in this context would also violate principles of prudential standing. One of the "rooted principle[s]" of prudential standing limitations is the requirement that "'a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 58 (2d Cir. 2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The "existence of a legal right held by the plaintiff is a predicate for standing." *Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 54 (2d Cir. 2000) (explaining *Warth*, 422 U.S. at 500-01). "Simply put, a plaintiff must establish his or her own injuries; a plaintiff seeking redress for alleged injuries inflicted on another person or entity has not established standing." *Lundstedt v. People's United Bank*, No. 3:14-cv-1479 (JAM), 2015 WL 540988, at *1 (D. Conn. Feb. 10, 2015); *see also Rynasko v. NYU*, 63 F.4th 186, 194-95 (2d Cir. 2023) (plaintiff parent who paid tuition for child to attend classes in-person during COVID-19 pandemic failed to show standing, because lack of in-person classes only harmed her child). Here, Plaintiff does not even allege that she claimed VA benefits, and VA records confirm that she did not. Allowing Plaintiff's individual capacity claim to proceed would be, in essence, allowing her personally to assert legal rights of her father. Accordingly, Plaintiff's claims made in her personal capacity should be dismissed on prudential grounds.

## II. The court lacks subject matter jurisdiction pursuant to the VJRA.

Even if the Court accepts all of Plaintiff's allegations as true, the entire complaint should be dismissed under Rule 12(b)(1), because this Court lacks subject matter jurisdiction under the VJRA. The VJRA, 38 U.S.C. § 511, deprives Federal District Courts of subject matter jurisdiction to hear disputes about VA decisions respecting benefits claims. Because Plaintiff's claims are inextricably intertwined with benefits-related decisions or processes, the entire case should be dismissed for lack of subject matter jurisdiction.

### A. The VJRA provides for an exclusive review scheme for VA benefits claims that deprives district courts of jurisdiction

The VJRA provides in pertinent part that the "Secretary [of VA] shall decide *all questions of law and fact* necessary to a decision by the Secretary under a law *that affects the provision of benefits* by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a) (emphasis added). It provides that the Secretary's decisions may only be appealed to the Board of Veterans' Appeals (an entity within VA), whose decisions may be appealed to the Court of Appeals for Veterans Claims, then to the Court of Appeals for the Federal Circuit, and finally to the Supreme Court. *See* 38 U.S.C. §§ 7104, 7252, 7292. Federal District Courts are expressly excluded from this process. *See* 38 U.S.C. § 511(a); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994). This "scheme of review for veterans' benefit claims provides meaningful remedies in a multitiered and carefully crafted administrative process," which is "designed to (1) ensure that benefits claims will not burden the courts and VA with litigation, and (2) promote the adequacy and uniformity of complex veterans' benefits decisions." *Sugrue*, 26 F.3d at 11-12.

The Second Circuit has made clear that under the VRJA, there is no subject matter jurisdiction in district court over claims that involve questions of fact or law relating to veterans'

benefits. *Id.* Numerous other circuits agree. *See King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 414 (5th Cir. 2013); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012); *Dambach v. United States*, 211 F. App'x 105, 108 (3d Cir. 2006); *Price v. United States*, 228 F.3d 420, 421 (D.C. Cir. 2000); *Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir. 1997); *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992).

The Second Circuit also found that such claims are barred by the VJRA, even where a plaintiff attempts to frame what is at heart a benefits dispute as another cause of action. *Sugrue*, 26 F.3d at 11 ("Although Sugrue's complaints invoke provisions of the Fifth Amendment and are styled in part as constitutional actions, the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms . . . . Similarly, neither the Privacy Act nor the FOIA may be used as a rhetorical cover to attack VA benefits determinations.") (citations omitted); *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (distinguishing facial attacks against legislation affecting veterans benefits from "other constitutional and statutory claims" relating to benefits, over which district courts do not have jurisdiction).

District courts in the Second Circuit have applied this principle in a variety of contexts. *See Schwingle v. United States*, No. 20-cv-6394 CJS, 2022 WL 9462632, at *6 (W.D.N.Y., Oct. 14, 2022) ("[L]itigants cannot avoid Section 511(a) by dressing up what are really benefits claims as constitutional claims or other types of claims for which the Government may have waived sovereign immunity."); *Carroll v. United States*, No. 1:19-cv-1230 (GTS/DJS), 2020 WL 4284130, at *6 (N.D.N.Y., July 27, 2020) ("[I]n the Second Circuit, styling a veterans' benefits claim as a deprivation-of-property claim is insufficient to circumvent the bar on judicial reviewability where that claim essentially amounts to a challenge of the denial of benefits or of

any other decision made by the Agency in connection with that benefits adjudication."); *Conyers v. United States*, No. 16-cv-2816 (JFB) (SIL), 2018 WL 1157754, at *6-8 & n.3 (E.D.N.Y., Jan. 31, 2018) (Report and Recommendation holding that plaintiff's negligence-based claims were "rhetorical cover" for his actual dispute—the denial of his self-employment assistance benefits), *adopted by* 2018 WL 1157823 (E.D.N.Y., March 2, 2018); *Majid v. DOVA Med. Ctr.*, No. 13-cv-2958 (CBA), 2013 WL 3766559, at *2 (E.D.N.Y., July 11, 2013) ("A veteran's invocation of alleged discriminatory treatment or other constitutional claim does not overcome 38 U.S.C. § 511(a)'s limitations on federal court review."); *Philippeaux v. United States*, No. 10 Civ. 6143 (NRB), 2011 WL 4472064, at *6 (S.D.N.Y., Sept. 27, 2011) ("[P]laintiff cannot overcome the jurisdictional bar of Section 511 by reframing his claim in constitutional terms. The statute encompasses all claims, whatever their basis, as long as they are 'necessary to a decision by the Secretary under a law that affects the provision of benefits . . .'") (quoting 38 U.S.C. § 511(a)).

**B. Plaintiff's claims must be dismissed because they would require the Court to evaluate VA's benefits determinations, which is barred by the VJRA**

Plaintiff alleges that VA failed to process Robinson's claim for benefits. Compl. ¶¶ 28-29, 36, 38. While styled as an FTCA action, the complaint centers on questions of fact and law relating to benefits, including that Robinson's claims for benefits were "de facto" denied and that he "never received disability benefits from the VA." *Id.* In other words, Plaintiff asks the Court to do exactly what Section 511 prohibits—"determine if the VA acted properly in handling . . . benefits claim[s]." *Schwingle*, 2022 WL 9462632, at *6. The Court could not hold that VA discriminated against Plaintiff's father or subjected him to a discriminatory system without first analyzing VA's process and decision-making regarding Robinson's benefits claims. The Court has no subject matter jurisdiction to address these questions.

Plaintiff Brown's claims are very similar to those in *Schwingle*, which held that an FTCA claim was precluded by the VJRA where plaintiff alleged that VA failed to ever process an application for disability benefits filed decades earlier. *Schwingle*, 2022 WL 9462632 at *8-9 (collecting cases). The *Schwingle* court "reject[ed] Plaintiff's contention that VJRA § 511(a) only applies where the VA has made an actual decision denying veterans' benefits." *Id.* at *9-10. Rather, the court concluded that § 511(a)'s bar on district court jurisdiction applied because resolving Schwingle's claim based on the VA's failure to "decide the claim or communicate with him about it for almost fifty years" required evaluating "whether the VA acted properly in handling Plaintiff's benefit request." *Id.* This Court should reach the same conclusion here.

As noted above, Plaintiff Brown cannot avoid the provisions of the VJRA through artful pleading. *See Sugrue*, 26 F.3d at 11. Although Plaintiff disclaims any interest in "relitigat[ing] her late father's benefits claims," Compl. ¶ 1, Plaintiff seeks relief based on the allegedly improper administration of her father's alleged *individual* benefits claims. Unlike *Monk*, the alleged harms in her complaint flow from failure to grant VA benefits to her father, rather than interactions with an allegedly discriminatory system.[10] *See* Compl. ¶ 31 ("Mr. Robinson struggled to financially support his family while receiving no support from the VA."), ¶ 36 ("The VA's de facto denial of Mr. Robinson's . . . benefits claims deprived Mr. Robinson of needed income to treat Plaintiff's congenital syphilis."). Accordingly, as in *Schwingle*, to decide

[10] In this way, Plaintiff's allegations are dissimilar from the *Monk* plaintiffs, who allege that Monk, Jr.'s claims for disability benefits were initially denied based on his "character of discharge" (COD) assessment. *Monk*, Am. Compl. ¶¶ 104, 109-110, 116-117, 121. Monk alleges that he suffered stigma within the veterans' community specifically due to the denials of his requested benefits. By contrast, Plaintiff alleges her father was honorably discharged and was never issued a denial of any benefits requested during his lifetime. It is not plausible that Plaintiff or her father could have suffered harm due to VA's *non*-adjudication of a claim. *See supra* page 7 & n. 4 (addressing discharge status of each person). And Plaintiff's allegations of harm premised on "systemic" discrimination are a conclusory afterthought that is not entitled to the presumption of truth. *See e.g.*, Compl. ¶¶ 36, 52; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Plaintiff's claims, the Court would have to evaluate the propriety of VA's failure to act on Robinson's benefits, an inquiry barred by the VJRA. *See Schwingle*, 2022 WL 9462632, at *9.

Other courts addressing this issue have held that allegations of disparate treatment in administration of benefits fall within the exclusive jurisdiction of the VJRA. *Lockwood v. United States*, No. 2:25-cv-608-EGL, 2026 WL 851441, at *2-4 (N.D. Ala. Jan. 9, 2026); *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1326-27 (N.D. Ala. 2016) (where plaintiff alleged that "racial disparity played into the decisions affecting his benefits," the court lacked jurisdiction because the "claim for unequal treatment concerns, in substance, the handling of Plaintiffs' benefits claims."); *Rosario Gonzalez v. United States*, 898 F. Supp. 2d 410, 429 (D.P.R. 2012) ("Plaintiffs cannot circumvent the exclusive [VJRA] procedures . . . by purporting to challenge systemic defects in VA programs or practices as distinguished from discrete VA actions or decisions."), *vacated on other grounds by* 544 F. App'x 5 (1st Cir. 2013); *see also Cheves v. Dep't of Veterans Affairs*, 227 F. Supp. 2d 1237, 1246 (M.D. Fla. 2002) (no subject matter jurisdiction where plaintiff alleged that VA violated the Equal Protection Clause by treating claims of African American veterans differently than claims of white veterans, under the VJRA, the court "simply lack[ed] jurisdiction to review VA's handling and processing of the plaintiffs' benefits claims.").

Plaintiff's claims also closely track the rejected claims in *Veterans for Common Sense (VCS) v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc). Like Plaintiff Brown, the plaintiff in *VCS* challenged VA's alleged failure to process or delay in processing benefits claims. In *VCS*, the plaintiff "attempt[ed] to circumvent the [VJRA's] jurisdictional limitation by disavowing relief on behalf of any individual veteran, and instead proffering evidence of *average* delays to

demonstrate statutory and constitutional violations." 678 F.3d at 1026. The Ninth Circuit rejected the claims as precluded by the VJRA, holding:

> The fact that VCS couches its complaint in terms of *average* delays cannot disguise the fact that it is, fundamentally, a challenge to thousands of individual mental health benefits decisions made by the VA. In order to determine whether the average delays alleged by VCS are unreasonable, the district court would have to review the circumstances surrounding the VA's provision of benefits to individual veterans. . . .

*Id.* at 1027. As noted above, Plaintiff's claimed injuries flow from VA's alleged *delay* in adjudicating Robinson's personal benefits claims. *See* Compl. ¶¶ 28-29. But as the courts in *Scwhingle* and *VCS* recognized, challenges to benefits processing times or alleged failures to process benefits claims must be brought within the VJRA system, even where such claims allege improper "average" processing across thousands of veterans.

The conclusion that the VJRA bars Plaintiff Brown's claims is consistent with this Court's prior rulings in *Monk*. First, *Monk* is factually distinguishable. The statistical racial disparities in benefits grant/denial rates alleged in *Monk* have no bearing on this Plaintiff's claims of improper *delay* in issuing a benefits decision. Thus, Plaintiff Brown's mention of the same statistical analysis as *Monk* relies on does not raise a plausible inference of discrimination with respect to her father. Second, the claim that this Court has thus far allowed in *Monk* was premised on harms from interacting with an allegedly racially discriminatory system. By contrast, Plaintiff Brown centers her complaint on the harms caused by not having VA benefits. *See e.g.* Compl. ¶¶ 30-36. Third, this Court recognized a distinction between *Monk's* claim of alleged systemic disparities in administration of benefits *outcomes* with claims of *delays* in issuing a benefits decision in the first instance. In *Monk*, this Court denied the government's motion for interlocutory appeal only after explicitly distinguishing the above precedent on this basis. This Court found:

> [b]y way of contrast [to *Monk*], in *VCS*, each veteran who experienced a lengthy benefits delay could have raised that complaint in the benefits appeals process. *Delay in each individual benefits adjudication is measurable on an individual level*—6 months, 1 year, 2 years—and then may be aggregated and averaged on a systemic level. Unlike delays, systemic racism is measured by starting with the aggregate data. Monk cannot measure racially disparate benefits *outcomes* without looking at the overall *denial rates* of different racial groups.

*Monk*, 2025 WL 473590, at *8 (emphasis added). Accordingly, this Court recognized that claims about delay in the administration of VA benefits would require review of the factual and legal determinations made by the Secretary prohibited by the VJRA. This Court also observed that the *Schwingle* decision is "consistent with decisions of a litany of courts that have concluded that section 511(a) precludes adjudication of claims involving *delay* by the VA in deciding a particular claim or in providing a benefit." *Id.* at *4 (internal quotation marks omitted and emphasis added). Here, the general rule reflected in *Schwingle* and *VCS* applies, and the complaint should be dismissed because the VJRA deprives this Court of subject matter jurisdiction.

## III. Any harm to Plaintiff caused by VA's alleged tortious conduct was not a breach of duty owed to her nor was it reasonably foreseeable to VA

Even if Plaintiff's father submitted claims to VA for benefits, Plaintiff cannot recover for injuries allegedly suffered in her own right because she is an unforeseeable victim to whom VA owes no duty. As a result, Plaintiff Brown's claims in her personal capacity should be dismissed under Rules 12(b)(1), or in the alternative Rule 12(b)(6).[11]

[11] The government's challenge to Plaintiff's claims on this basis (duty and foreseeability) is a facial Rule 12(b)(1) argument, or in the alternative, a Rule 12(b)(6) argument. *See Brownback v. King*, 592 U.S. 209, 218 (2021) (all elements of an FTCA claim are jurisdictional, so a plaintiff must plausibly allege that the United States would be liable to survive both a 12(b)(6) and 12(b)(1) challenge). The Court could rule for the Defendant even assuming Plaintiff's allegations are all true. Critically, however, if the Court agrees that Robinson never submitted a claim to VA for benefits—then the problems identified here respecting foreseeability and the absence of any duty apply equally to Robinson, and to Plaintiff's claims on behalf of his estate. In such a factual scenario, what are VA's *(Continued)*

**A. VA owes no duty to Plaintiff Brown**

"'Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.'" *Lawrence v. O&G Indus., Inc.*, 319 Conn. 641, 649 (2015) (citation omitted). "'Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached.'" *Id.* (citation omitted).

In Connecticut, the question of duty hinges largely on the question of foreseeability; courts must examine "'whether the specific harm alleged by the plaintiff was foreseeable to the defendant.'" *Id.* (citation omitted). "'The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised.'" *Id.* (citation omitted). However, Connecticut courts hold that "'[m]any harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed.'" *Id.* at 650 (citation omitted). Accordingly, the Connecticut Supreme Court requires a multi-factor analysis:

> A further inquiry must be made, for we recognize that duty is not sacrosanct in itself but is only an expression of the sum total of those considerations of policy that lead the law to say that the plaintiff is entitled to protection. The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. In considering whether public policy suggests the imposition of a duty, we consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. This totality of the circumstances rule is most consistent with the

---

obligations *in tort* to a veteran who never sought VA benefits during their lifetime? The only legally reasonable answer is "none." And veterans cannot sue the government in tort for harms that occurred during their military service. *Feres v. United States*, 340 U.S. 135 (1950).

> public policy goals of our legal system, as well as the general tenor of our tort jurisprudence.

*Id.* at 650-51(cleaned up).

All four factors weigh against imposing a duty on VA to Plaintiff in this context. First, while this Court has found that VA has a "statutory duty" to help *claimants* develop their benefits claims, *Monk*, 2024 WL 1344712, at *9 (citing 38 U.S.C. § 5103A, which discusses the duty to *claimants*), Plaintiff does not allege that she made any claim. The parties could not reasonably expect a duty to run to someone who has never filed a claim or interacted with VA. Second, the public policies of encouraging participation in the activities—eligible persons claiming benefits from VA—will not be impaired by limiting the tort recoveries of veterans' children for claims made by a parent. Nor is there any real risk of children being harmed by VA when their parents engage in the activities—claiming benefits. Third, even setting aside VJRA preclusion, increased litigation will be avoided if the children of veterans cannot file their own tort claims against the government agency that processed their parents' benefits claims. Fourth and last, Defendant is not aware of any other jurisdiction that has permitted the non-veteran children of veterans to seek damages against VA in tort in relation to benefits claims filed by the parent veteran(s), especially where that child never personally interacted with VA.

For Plaintiff's claims in her own capacity, she also has not plead facts sufficient to allow the Court to find VA owed a duty to her. Plaintiff appears to concede as much—her Complaint does not even argue that VA owed her any duty of care for her first and third claims.[12]

[12] Even if she did allege a duty owed to her, such a statement would be a legal conclusion rather than a factual allegation, and therefore not entitled to any presumption of veracity on a motion to dismiss. *See Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (noting the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions").

Specifically, Plaintiff's first cause of action, for negligence, is allegedly brought on her own behalf, Compl. ¶ 48, but she alleges only that Defendant owed a duty of care to her father, Robinson. *Id.* ¶¶ 49-50. The first cause of action incorporates all prior paragraphs of the complaint, but nowhere in the complaint does Plaintiff allege facts sufficient to show that VA owes a duty of care to the child of a benefits claimant or prospective claimant.

Plaintiff's third cause of action, for negligent supervision, fails for the same reasons. *See Id.* ¶¶ 60-65. The third cause of action includes allegations respecting VA's actions on Robinson's alleged benefits claims, but neither those paragraphs nor any others in the complaint allege that VA owed *Plaintiff* a duty with respect to its supervision of its benefits administration staff. Since there are no allegations that Plaintiff interacted with VA's benefits administration staff (and the VA record is that she did not), it is impossible to see how VA could owe Plaintiff any duty respecting its supervision of those staff.

As noted above, Plaintiff does not allege that she herself filed any disability or other benefits claims with VA. Instead, she alleges that she was collaterally harmed by VA's decisions respecting Robinson's claims, *e.g.*, "VA's de facto denial of Mr. Robinson's . . . benefits claims deprived [him] of needed income to treat Plaintiff's congenital syphilis." Compl. ¶ 36. Even taking all of Plaintiff's allegations as true, it is not foreseeable to VA that failing to decide a veteran's claim would have caused that veteran's child (who is not a veteran) an emotional injury in tort.

### B. Plaintiff cannot plausibly allege claim for negligent infliction of emotional distress in her individual capacity

Plaintiff's second cause of action, for negligent infliction of emotional distress, also fails because VA owed her no duty. Plaintiff's allegations respecting duty and foreseeability in the second cause of action do not save her complaint because they are legal conclusions that the

Court need not accept. *See* Compl. ¶ 56 ("VA has an obligation under 38 U.S.C. § 303 to administer benefits in a way that is free from racial discrimination."), ¶ 57 ("It was foreseeable that . . . Plaintiff would suffer emotional distress from being forced to seek benefits from a system the VA administered in a racially discriminatory manner."). *See Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (noting the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions"). Plaintiff has failed to allege facts from which the Court could find a duty owed to her or could find that she was a foreseeable victim.

"Under Connecticut law, the essential elements of a claim for negligent infliction of emotional distress are (1) conduct by the defendant that 'created an unreasonable risk of causing the plaintiff emotional distress,' that was (2) foreseeable, (3) 'severe enough that it might result in illness or bodily harm,' and (4) caused by the defendant's conduct." *Flores Benitez v. Miller*, 687 F. Supp. 3d 304, 336–37 (D. Conn. 2023) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)). "In particular, there are two types of negligent infliction of emotional distress claims: direct emotional distress and bystander emotional distress." *Id.* "The distinction between the two types of claims 'turns on whether the duty breached was owed directly to the plaintiff (direct) or to a third party (bystander).'" *Id.* (quoting *Carrol*, 262 Conn. at 445). As discussed with respect to her first and third causes of action, there are no allegations to support that VA owed Plaintiff a duty directly, so she has not alleged any direct emotional distress claim.

In bystander cases, the Connecticut Supreme Court has held that the plaintiff must prove that: (1) the bystander is closely related to the victim; (2) the emotional injury of the bystander is caused by the "contemporaneous sensory perception" of the injurious event or conduct; (3) the injury to the victim must result in death or serious physical injury; and (4) the bystander's emotional injury must be serious, "beyond that which would be anticipated in a disinterested

witness and which is not the result of an abnormal response." *Flores Benitez*, 687 F. Supp. 3d at 337 (quoting *Clohessy v. Bachelor*, 237 Conn. 31, 65 (1996)); *Martin v. Reliance Ins. Co.*, 954 F. Supp. 476, 483 (D. Conn. 1997);

At a minimum, Plaintiff's bystander emotional distress claim fails the second and fourth elements. On the second element, Plaintiff pleads no facts to support an inference that she herself had a "contemporaneous sensory perception of the injurious event or contact"—again, she did not interact with VA as a claimant. Nor does she allege facts demonstrating that she had a "contemporaneous sensory perception" of any contact between VA and Robinson (which Defendant asserts did not occur at all). In fact, she alleges that she first learned about the alleged November 1950 application for benefits decades later, in 2023, when she received a response from the VA to a FOIA request. Compl.¶¶ 41-42. The fourth element also fails because Plaintiff's alleged injury is the result of an abnormal response: "Plaintiff continues to relive her traumatic childhood memories of her late father's physical and psychological suffering on a daily basis." Compl. ¶ 58. Although grieving a parent is not abnormal, perseverating daily on the parent's suffering fifty years after their death is an abnormal response.

The third element is also lacking. Plaintiff does not allege that Robinson suffered death or serious physical injury due to VA's conduct. Rather, she alleges that he suffered dignitary, reputational, emotional, and psychological harm, emotional distress, and/or emotional and mental suffering resulting from VA's conduct. Compl. ¶¶ 52, 57-58, 62, 64. Her claim is not salvaged by her conclusory allegation that Robinson's and her "emotional distress was severe enough that it might result in illness or bodily harm." ¶ 58. First, the allegation uses the word "might," which is speculative and insufficient to satisfy plausibility standards for a bystander

theory of emotional distress. And second, "bodily harm" alone does not satisfy the standard set by the third element, that the injury involve "death or serious physical injury."

Ultimately, Plaintiff fails to allege facts sufficient to raise a plausible inference that the specific harm she suffered "was foreseeable to the defendant," for any of her three claims. *See Lawrence*, 319 Conn. at 649-50. It bears emphasizing, once again, that Plaintiff herself did not interact with VA respecting benefits; she is merely the child of someone who had an entitlement to do so. Any emotional harm Plaintiff suffered in her personal capacity because of VA's conduct was not reasonably foreseeable to VA.

## IV. Plaintiff's complaint is untimely

Plaintiff's claims, both on her own behalf and as administratrix of Robinson's estate, should be dismissed under Rule 12(b)(6) on the separate basis that they are untimely.[13] The arguments presented here respecting timeliness are new and distinct from those previously raised in *Monk*, which at this stage have challenged only the timeliness of Conley Monk, Jr.'s own claims. *See Monk*, 2024 WL 1344712, at *12-13; *Monk*, Mot. to Dismiss, ECF No. 23, at 33-39 (Mar. 31, 2023); *Monk*, Reply in Supp. of Mot. to Dismiss, ECF No. 66, at 15-18 (July 21, 2023). Even applying the test set forth in *Monk* and applied to Conley Monk, Jr. himself, Plaintiff's claims fail. *See Monk*, 2024 WL 1344712, at *12-13.

Under the FTCA, a claimant must present his tort claim administratively to the appropriate federal agency "within two years after such claim accrues" or it "shall be forever barred." 28 U.S.C. § 2401(b); *Kronisch v. United States*, 150 F.3d 112, 120-21 (2d Cir. 1998).

---

[13] Time limitations under the FTCA are not jurisdictional and are addressed under Rule 12(b)(6). *Palmer-Williams v. United States*, No 14-CV-9260 (CS), 2016 WL 676465, at *3 (S.D.N.Y. Feb. 18, 2016).

Generally, an FTCA claim accrues at the time of injury. *United States v. Kubrick*, 444 U.S. 111, 120 (1979); *Monk*, 2024 WL 1344712, at *12.

As set out in Plaintiff Brown's complaint, Robinson died in 1967. Compl. ¶ 37. Plaintiff alleges she first learned of her father's 1950 "application for service-related disability benefits" on October 26, 2023. Compl. ¶ 42. She does not explain when she learned about her father's alleged benefits claim from 1947. Plaintiff further alleges that she "learned about the VA's history of administering a racially discriminatory benefits system that disfavored Black veterans" in May 2024. *Id.* ¶ 43. Plaintiff presented her claims to VA on March 11, 2025. *Id.* ¶ 44. To be timely, Plaintiff's claim must have accrued at or after March 11, 2023. *See Monk*, 2024 WL 1344712, at *12. Plaintiff filed her complaint in District Court on January 12, 2026. Compl. ¶ 1. Critically, and unlike Monk, Jr., Plaintiff's complaint does not allege any contacts regarding benefits between VA and her father, or herself, after his death in 1967.

Certain events in the *Monk* litigation are relevant here. The initial complaint in *Monk* was filed in November 2022. *Monk*, ECF No. 1 (Nov. 28, 2022). The *Monk* litigation team began advertising the *Monk* case and seeking clients, in Connecticut and beyond, immediately. Each of these events occurred more than two years before Plaintiff presented her claims to VA, on March 11, 2025. *See* Compl. ¶ 44. The *Monk* amended complaint was filed in June 2023. *Monk*, ECF No. 36 (June 5, 2023).[14]

[14] The amended complaint includes class allegations. As noted above, the *Monk* class is alleged to include "All Black applicants for veterans' benefits administered by the Department of Veterans Affairs or its predecessor at any time since January 1, 1945 and who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675." *Monk*, Am. Compl., ¶ 195, ECF No. 36. This definition would appear to include Robinson, if he had applied for veterans benefits (but the record is that he did not). Notably, if Brown had filed a claim for benefits with VA (but again, the record is that she did not), the *Monk* class definition also would include her—notwithstanding that she herself is not a veteran and did not serve in the U.S. military.

As the Court noted at the oral argument regarding the government's timeliness challenges in *Monk*, for a claim to be timely under "the continuing course of conduct theory, we're going to have to find, plaintiff by plaintiff, an act within the statute of limitations in order for that plaintiff to bring a timely claim." *Monk*, ECF No. 80, Tr. 44:6-13. Here, Plaintiff Brown cannot satisfy that test because she identifies no contact relating to benefits between her father and VA, or herself and VA, between 1967 and the 2025 filing of her administrative claim. As there is no act alleged in the complaint that is within the 2-year limitations period before her 2025 administrative claim, her claim is untimely.

The "last violation" identified in *Monk* does not save Plaintiff's claims here. In *Monk*, the Court found the complaint timely because the "last violation" Monk alleged occurred after February 25, 2020, the date two years prior to Monk filing his administrative claim with VA. *See Monk*, 2024 WL 1344712, at *13. Specifically, the Court found that "[t]he statistical analysis of racially disparate benefits outcomes relied upon by Monk includes data from after February 25, 2020. *See* Am. Compl., Doc. No. 36 ¶¶ 39, 43 (including data for the full year of 2020 and indicating that disparate benefits outcomes between white and Black veterans continued through 2020)." *Monk*, 2024 WL 1344712, at *13.[15] Here, Plaintiff attempts to rely on the same data. *See* Compl. ¶ 8. First, that data does not make Plaintiff's claim timely because it relates to benefits claims that were adjudicated, not claims that were never decided, like Robinson's. So it does not reflect an "ongoing policy of discrimination" that impacted Robinson. *Monk*, 2024 WL 1344712, at *13. But also, to be timely, Plaintiff's claim must have accrued later than Monk's—after March 2023. Unlike Monk, Plaintiff does not allege any continuing violation that falls within her

[15] This statistical analysis, based on data running through 2020, was incorporated into both Monk's amended complaint and his original complaint, filed in November 2022. *See Monk*, ECF Nos. 1, 36.

limitations period—she does not allege harm by reference to any data (let alone any other activity) from 2021, 2022, or 2023. Accordingly, pursuant to the test set out in *Monk*, Plaintiff's complaint is untimely.

Plaintiff cannot avoid this outcome by invoking the "diligence-discovery" rule of accrual. *See Kronisch*, 150 F.3d at 121. The rule applies where a plaintiff would "reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *Id.* "Under this rule, 'accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.'" *Id.* (citation omitted). Plaintiff appears to seek this rule's protection, and to delay her accrual date beyond March 2023, through her allegations that she first learned of her father's 1950 "application for service-related disability benefits" on October 26, 2023, and her allegation that she "learned about the VA's history of administering a racially discriminatory benefits system that disfavored Black veterans" in May 2024. *Id.* ¶¶ 42-43. But the diligence-discovery rule "is not an exacting requirement." *Kronisch*, 150 F.3d at 121. It requires only "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Id.*

Caselaw in the Second Circuit confirms that a plaintiff need not know every relevant fact of her injury or even that the injury was inflicted negligently or implicates a legal claim. *Kronisch,* 150 F .3d at 121; *Kubrick,* 444 U.S. at 123 (accrual of an FTCA claim does not "await awareness by the plaintiff that his injury was negligently inflicted"). Rather, "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Kronisch,* 150 F.3d at 121; *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). Whether a plaintiff "should have known" these

critical facts is decided by reference to "whether a reasonable person exercising due and reasonable diligence would have discovered such facts." *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)). Thus, while a "mere hunch, hint, suspicion, or rumor of a claim" does not cause accrual, "such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Kronisch*, 150 F.3d at 121.

Sufficient facts suggesting "the possible existence of a claim" were available to Plaintiff long before March 11, 2023. For example, Plaintiff alleges that her father never received disability benefits, struggled with physical and psychological symptoms, and "struggled to financially support his family while receiving no support from the VA." Compl. ¶¶ 30-31. She alleges that her father applied for benefits in 1947 and never got a response, and she does not allege she discovered these events in 2023 or later. *Id.* ¶ 28. Further, she alleges that, following Robinson's death in 1967, her mother "filed a claim with the VA for service-connected death benefits," which was denied because of asserted characteristics of Robinson's military service and/or benefits status. *Id.* ¶ 38. VA's declarant has explained that Robinson's wife, Ernestine Robinson, submitted a claim after Robinson's death for Death Pension or Dependency and Indemnity Compensation benefits for Plaintiff's siblings, and that the Dependency and Indemnity Compensation benefits were denied (though Plaintiff's siblings did receive pension benefits). Brand Decl. ¶¶ 9-10. These facts also were known to Plaintiff prior to March 2023. And no appeal or follow up by Plaintiff occurred. Accordingly, even if the diligence-discovery rule applied, the accrual date for Plaintiff's claims was before March 2023.

Finally, Plaintiff cannot make her claims timely by alleging that she did not know about the *Monk* allegations until 2023 or even later. Compl. ¶ 43 (alleging to have learned of "systemic

disparities" in the VA benefits system in May 2024). As discussed, the *Monk* matter alleging such systemic disparities was publicly filed in November 2022, and at the same time, *Monk's* counsel repeatedly publicized within New Haven, Connecticut, the claims of systemic disparities.[16] Plaintiff, who is a resident of New Haven, Connecticut, knew or should have known of the allegations over two years prior to the filing of her administrative claim. Plaintiff's March 2025 administrative claim was filed too late, warranting dismissal of the entire complaint.

## V. Plaintiff's claims for reputational harm must be struck or dismissed

Plaintiff's claims for "reputational" harm should either be struck or dismissed for lack of subject matter jurisdiction. Whether alleged as a type of damage or a type of claim, the FTCA does not waive the United States's sovereign immunity for libel or slander. 28 U.S.C. § 2680(h); *see Dudley v. Soc. Sec. Admin.*, No. 3:23-cv-705 (VAB), 2024 WL 3845758, at *2, 6-7 (D. Conn. Aug. 16, 2024) (dismissing FTCA claim of plaintiff who alleged he was yelled at by a Social Security Administration (SSA) employee, escorted from SSA building, and told he could not collect Social Security benefits, and who felt he was "being mistreated because of [his] skin color and because of who I am"); *Lockwood*, 2026 WL 851441, at *6 (finding that "to the extent that Lockwood asserts claims against the United States for harms done to his reputation. . .

[16] The Veterans Legal Service Clinic's website has a landing page for *Monk v. U.S.* that includes the following "banner" notice at its top: "*If you are a Black veteran who is interested in filing a complaint against Veterans Affairs for maintaining a discriminatory benefits system, please read our FTCA FAQs for more information about how to submit a Federal Tort Claims Act administrative claim, including a sample form.*" Veterans Legal Services Clinic, *Monk v. U.S.*, at https://law.yale.edu/clinics/vlsc/monk-v-us (last visited Sept. 11, 2026) (typeface in original). *See also* Yale Law School, *Black Veteran Sues Over Racial Disparities in VA Benefits Administration*, Nov. 28, 2022, at https://law.yale.edu/yls-today/news/black-veteran-sues-over-racial-disparities-va-benefits-administration; *Where We Live,* Connecticut Public Radio, *Report finds racial disparities persist in military discharge*, at timestamp 8:30, Jan. 13, 2023, *at* https://www.ctpublic.org/show/where-we-live/2023-01-13/report-finds-racial-disparities-persist-in-military-discharge (Monk's counsel describing the *Monk* suit); A. Walker, *Yale Daily News*, *Law School clinic's discrimination case on behalf of Black veterans proceeds*, Apr. 15, 2024, at https://yaledailynews.com/articles/law-school-clinics-discrimination-case-on-behalf-of-black-veterans-proceeds. The Court may take judicial notice of these websites. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247-48 (S.D.N.Y. 2025) (recognizing that courts may take judicial notice of websites for purposes of establishing that an individual was "on notice").

Lockwood's alleged reputational injuries flowing from his VA benefits rating are akin to libel and slander, and as such are precluded"). Thus, Plaintiff could not possibly recover money damages for reputational injury, nor could she advance a claim for libel or slander that is cloaked as a negligence claim.

A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In this Circuit, a court may strike a request for unauthorized damages. In *Mills v. Fox*, 421 F. Supp. 519 (E.D.N.Y. 1976), an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.*, the court granted the defendant's motion to strike a punitive damages claim because they were not authorized by the statute at issue. *See id.* at 524 (collecting cases). Similarly, the court in *Quinn v. Straus Broadcasting Grp., Inc.*, 309 F. Supp. 1208 (S.D.N.Y. 1970), granted the defendant's motion to strike the damages clause of the complaint because the damages sought by the plaintiff were greater than those explicitly allowed under New York law. *Id.* at 1210. Damages for "reputational" harm are not permitted under the FTCA, and Plaintiff's allegations about them will prejudice the United States if they remain in the complaint. *See Wyeth v. King Pharms., Inc.*, 396 F. Supp. 2d 280, 293 (E.D.N.Y. 2005). They should be struck.

To the extent that Plaintiff seeks to bring a separate legal claim based on reputational injury, such a claim should be dismissed under Rule 12(b)(1) because it sounds in libel or slander. *Lockwood*, 2026 WL 851441, at *6 (finding allegations about reputational harm were precluded by the FTCA and should be dismissed); *see also Dudley*, 2024 WL 3845758, at *2, 6-7 (dismissing "claims of reputation harm [because they] are inextricably linked with the kinds of intentional torts, such as libel and slander, that the FTCA expressly prohibits."); *Cadman v. United States*, 541 F. App'x 911, 913–14 (11th Cir. 2013) (FTCA sovereign immunity waiver

exceptions "are not limited to the torts specifically named, but instead encompass situations where the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim.") (internal quotations omitted); *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C.Cir.1991) (concluding that claims based on "dissemination of [defamatory] information" were barred by the FTCA's exemptions); *Johnson v. Sawyer*, 47 F.3d 716, 725 (5th Cir.1995) (noting that the district court held a false light claim was barred because "'[i]ts essence is injury to [plaintiff's] reputation, and it therefore falls under 28 U.S.C. § 2680(h)'"); *Thomas–Lazear v. F.B.I.*, 851 F.2d 1202, 1206 (9th Cir.1988) (rejecting an "attempt[ ] to fashion the slander and libel claims into a claim for negligent infliction of emotional distress ..." under the FTCA); *Philippeaux v. United States*, No. 10 CIV. 6143 NRB, 2011 WL 4472064, at *10 (S.D.N.Y. Sept. 27, 2011) ("The Court . . . lacks jurisdiction over plaintiff's emotional distress claims as they are nothing more than an effort to remove the damage element from an intentional tort barred by Section 2680(h) and plead it separately as negligent infliction of emotional distress.") (internal quotations omitted).

Accordingly, if the entire case is not dismissed, Plaintiff's alleged reputational injury (whether included as a legal claim or form of damages) have no place in this case and should be struck or dismissed.

## CONCLUSION

For the reasons set forth above, the United States respectfully asks the Court to grant this motion. The Court should dismiss this entire case for lack of subject matter jurisdiction because Plaintiff lacks standing and the claims in the complaint are barred by the VJRA. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). The Court should also dismiss this entire case because it is not timely. *See* Fed. R. Civ. P. 12(b)(6). In the alternative, if the Court does not dismiss the entire case, the Court

should dismiss Plaintiff's personal capacity claims and reputational harm claims and/or strike claims for reputational damages from the complaint. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3), 12(b)(6), 12(f).

Respectfully submitted,

DEFENDANT
UNITED STATES OF AMERICA

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*s/ Stewart C. Dearing*
Stewart C. Dearing [phv20593]
Assistant United States Attorney
United States Attorney's Office
for the District of Connecticut
1000 Lafayette Boulevard, 10th Flr.
Bridgeport, CT 06604
Telephone: (203) 696-3020
Fax: (203) 579-5575
E-mail: Stewart.Dearing@usdoj.gov